(48 South. 989.)

No. 17,220.

HERO v. CONSUMERS' LUMBER MFG. & EXPORT CO.

(March 15, 1909.)

1. CORPORATIONS (§ 553*)—RECEIVER—RIGHT OF STOCKHOLDER TO.

A receiver will not be appointed on the petition of a stockholder; it not satisfactorily appearing that the officers mismanaged or misused the funds or other property of the corporation.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 553.*]

2. CORPORATIONS (§ 553*)—RECEIVER—RIGHT OF STOCKHOLDER TO.

The remedy, if the complaint is well founded, can be found in the charter, which authorizes liquidation of the company's affairs by commissioners.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 553.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Charles M. Hero against the Consumers' Lumber Manufacturing & Export Company. Judgment for defendant, and plaintiff appeals. Affirmed.

William Sommer Hero, for appellant. Dart & Kernan and William Kernan Dart, for appellee.

BREAUX, C. J. This is a suit by plaintiff for the appointment of a receiver to take charge of and administer the affairs of the defendant company.

The charter is dated October 6, 1906. The company began operations in the January following.

Plaintiff, who sued for the appointment of a receiver, is a stockholder in the Consumers' Lumber Manufacturing & Export Company to the extent of $2,500 since June, 1907. He was, prior to March, 1908, vice president of the defendant company.

Robert H. Hackney was the president of the company.

The company was organized with a capital stock on paper of $50,000. It began operations with less than $5,000 paid-up capital, and it never had over $9,000 paid-up capital, represented by 90 shares at $100 each.

In addition to the stock held by plaintiff, the secretary-treasurer of the company held 25 shares, the president 20, and one of the directors a similar amount.

The hope of plaintiff, as we infer, was that he would always be able to protect his interest, and that he and Director Silva would exercise a controlling interest in amount, or sufficient, at any rate, to protect their own interest.

But, unfortunately for plaintiff, he and Silva did not agree when it became necessary, as plaintiff thought, to act and to prevent action on the part of the other directors.

A meeting of the board of directors was held in March, 1908.

Plaintiff complains that he did not receive timely notice. He had up to that time been vice president of the company. He was succeeded by Close, who was elected in his stead.

But, three or four days after Close had been elected vice president, he became aware that he could not hold the office of director, and, it followed, could not be vice president. He thereupon sent in his resignation, after having served two or three days, both as member of the board of directors and as vice president. His resignation was accepted.

There had been a meeting held in February preceding the election of the board of directors, at which plaintiff was not re-elected as a member of the board.

His position was filled by Close, as just stated.

There was warm discussion at the February meeting, and it was understood that $3,500 would be raised in order to provide the company with needed funds.

Plaintiff was assessed at $400 of the amount. He did not show himself anxious to come to the relief of the company.

This, we infer, accounts for the election of another to the board and to the vice presidency.

There was an amount raised by the other members, some $2,000.

After the resignation of Close, Silva was elected vice president. His opinion was that the company had done fairly well, considering the business depression through which it had passed. He stated that since the depression in business had subsided that company had improved financially.

The cashier of a local bank, who had made an advance of money to the company, was called as a witness.

Before making the loan, he had called for a statement of the company's business, into which he examined carefully, and upon inquiry as to the officers opened an account with them for $2,000, of which the company drew only $1,000.

At its maturity, in spite of the fact that an application had been made for the appointment of a receiver, he renewed the loan.

This officer testified that his bank made no loans unless they had confidence in the parties. He further stated that he usually required those who borrowed to leave 20 per cent. of the amount of the loan as a deposit; that no well-managed bank would attempt to do business without requiring a deposit with the bank.

The president of the defendant company testified in this case.

Notice to attend meeting:

It is true, as set forth by plaintiff in his petition, that short notice, as to time, was given to him to be present at the meeting at which officers were elected in accordance with the terms of the charter to serve during the ensuing year, including the office of vice president, the position the plaintiff had previously filled.

The complaint is not cause sufficient to appoint a receiver. The charter contains no provision regarding notice to be given to the members of the board of a meeting to be held to elect officers.

While under general law and custom notice is necessary, it does not follow that a day's or two days' notice will be considered insufficient, if it appears that the time was ample if the notified member desired to be present.

A fourth director:

Three directors is the number stated in the charter. It was error to elect a fourth director, in view of that provision, and error to elect him vice president.

This error was not persisted in:

In a day or two after the election, the newly elected vice president discovered the mistake which had been made. At once he resigned and withdrew from the membership of the board, and a member of the board, one of the three remaining, was elected vice president.

This oversight was not of such a nature as to prejudice the company, or any of the rights of the complaining plaintiff. An error of as little consequence as that was can be of no avail to a stockholder seeking to have a receiver appointed.

The asserted insolvency of the company:

No part of the statute mentions insolvency in itself and of itself as grounds sufficient at the instance of a stockholder to appoint a receiver.

The fourth section of the statute (Act No. 159, p. 312, of 1898) cited supra contains the only provision on the subject.

It provides that at the instance of any creditor, having a final and executory judgment, when the corporation is insolvent, is one of the conditions authorizing the court to appoint a receiver.

That is not the condition here, as has clearly been made to appear.

If there are other causes authorizing the appointment under the other provisions of the act, insolvency might be considered as assisting in making out a case under them.

But otherwise we are limited to the condition contained in the cited section supra, so that, even if the corporation is insolvent, the cause is not one sufficient to authorize the court to appoint a receiver.

Minority stockholders:

Plaintiff seeks to have his case considered within the terms of section 2 of the statute (Act No. 159, p. 312, of 1898) in question, in which it is provided that a stockholder may be heard if the majority are violating charter rights of the minority and putting their interest in imminent danger.

We have considered the reasons urged for the appointment on the ground of a violated charter. This ground we pass without further comment, except to say that the law which governs corporations is the same which governs individuals. As to these, the merest oversight, not done with the intention of committing a wrong, is not looked upon as a fault for which action lies.

It is not always the safest method to attempt to summarize in a few sentences the condition of an industrial enterprise. It cannot be said with absolute certainty that it will fail or that it will prove a success.

This corporation began with limited capital. Afterward all the charter members save one sought to interest their own stockholders. In this they were not entirely successful. They could not well do otherwise under the circumstances. In thus acting, it cannot be said that there was impropriety. They sought to save the concern and to hold it up. As there is no evidence before us of mismanagement, wasting, or misusing, or misapplying the property, we must decline to reverse the judgment.

The rights of minority stockholders must be determined in accordance with act No. 102, p. 128, of 1898.

This act fixes a difference between creditors and stockholders.

As relates to the former, solvency or insolvency is a question to be considered.

As relates to the latter, the management, without regard in itself to solvency and insolvency, must be considered, nor is the fact that the profits are not satisfactory, or that none are realized, contributing questions.

By reason of the law and the evidence being in favor of plaintiff, the judgment of the district court is affirmed.