(75 South. 735)

(No. 22436.)

GORDON v. BUSINESS MEN'S RACING ASS'N.

(May 14, 1917. Rehearing Denied June 11, 1917.)

*(Syllabus by the Court.)*

1. CORPORATIONS ⬤≫546—STOCKHOLDER'S ACTION FOR RECEIVERSHIP—ESTOPPEL.

A stockholder, who, suing for the appointment of a receiver of a corporation on the ground that the character and method of the business conducted by it is contrary to law, admits that he or she bought stock in the corporation with full knowledge of the character and method of the business carried on by the defendant company and with the belief that it was contrary to law and for the sole purpose of bringing the suit to appoint a receiver, has no cause of complaint or right of action to demand the appointment of a receiver.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2176, 2177.]

2. CORPORATIONS ⬤≫546 — RECEIVERSHIP — STATUTE — "ANY STOCKHOLDER OR CREDITOR."

In the statute (Act No. 159 of 1908) empowering the courts to appoint a receiver of a corporation, under certain circumstances, "at the instance of any stockholder or creditor," the expression "any stockholder or creditor" is construed to mean "a stockholder or creditor," and

not to be so comprehensive as to abolish all pleas or defenses to the capacity or right of action of any stockholder or creditor to maintain an action for the appointment of a receiver.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2176, 2177.]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by Jean M. Gordon against the Business Men's Racing Association. Judgment for defendant, and plaintiff appeals. Affirmed.

Solomon Wolff, St. Clair Adams, Robert H. Marr, F. S. Weis, Thomas E. Furlow, and Donelson Caffery, all of New Orleans, for appellant. John J. Reilley and John P. Sullivan, both of New Orleans, for appellee.

O'NIELL, J. This is a suit by a stockholder of the defendant company to have a receiver appointed to take charge of the property and business of the corporation, on the ground that its business is being conducted contrary to law. The plaintiff describes in her petition, with minute detail, the method and manner in which, she alleges, the defendant corporation is conducting its business, and she complains that the alleged method of conducting the business is in violation of a criminal statute, the Act No. 57 of 1908, commonly called the Locke Law. That statute denounces as a misdemeanor the promoting or encouraging of the operation of a betting book on horse races, or promoting or encouraging, by any device, any person or persons to bet or wager on a horse race.

In answer to the rule to show cause why a receiver should not be appointed, the defendant filed an exception of no cause of action, and a plea of estoppel, alleging that the plaintiff acquired stock in the corporation with full knowledge of the conditions and facts upon which her suit was based and for the sole purpose of fomenting discord and litigation.

The exception of no cause of action was sustained by the district court, and the plaintiff appealed. On appeal, the judgment on the exception of no cause of action was reversed, and the case was remanded to the district court, that the plea of estoppel might be decided and the case proceeded with according to law. See Gordon v. Business Men's Racing Association, 140 La. 674, 73 South. 768.

[1] The only evidence heard on the trial of the plea of estoppel was the testimony of the plaintiff herself, who was called to the witness stand by the defendant's counsel for cross-examination. Having testified that she owned two shares of stock in the defendant corporation, she was asked when she purchased the stock. Her attorney objected to the question and the evidence to be obtained, on the ground that it was irrelevant and immaterial. The objection being overruled, the defendant's counsel asked her whether she had purchased the stock as an investment, and, if not, what was her purpose in buying the two shares of stock. Her answer was that she certainly did not buy the stock for an investment. The cross-examination then proceeded and concluded as follows:

Q. What was your motive in buying the stock?
A. To show that, in my opinion, the Locke law was being openly and flagrantly violated.
Q. To show it to whom, Miss Gordon?
A. To this community.
Q. How about this court?
A. Well, this court is part of the community, I think.
Q. Then, you were familiar with the facts existing at the time of the purchase of the stock?
A. Yes, sir; in my opinion the law was being violated, from all I heard from people who were out there. Dozens and hundreds of people came to me and asked me why something was not being done.

It is therefore admitted by the plaintiff that she was aware of the character and method of the business carried on by the defendant company before she purchased stock in the corporation, that she believed that method of conducting the business was contrary to law, and that, with that knowledge and belief, she bought stock in the corporation for the sole purpose of acquiring a cause for complaint or right of action to demand the appointment of a receiver to take charge of the property and business of the corporation.

[2] Among the instances in which the courts are empowered, by the Act No. 159 of 1898, to appoint a receiver to take charge of the property and business of a corporation domiciled in this state, is the following:

"(7) At the instance of any stockholder or creditor when the corporation has been adjudged not organized according to law, or pursuing any business, calling or avocation contrary to law."

It is conceded or assumed by the learned counsel in this case that the last clause in the paragraph of the statute quoted is to be read: "or *is* pursuing any business, calling or avocation contrary to law." It is not contended by the learned counsel for the defendant that the corporation must be first "adjudged" to be pursuing any business, calling, or avocation contrary to law, before a stockholder or creditor can sue for the appointment of a receiver.

The defendant relies upon the doctrine announced in the case of Von Schlemmer v. Keystone Life Ins. Co., 121 La. 987, 46 South. 991, viz.:

"Courts are reluctant to interfere with the affairs of a corporation on behalf of a minority of the stockholders, and will not do so at the suit of a stockholder who acquired his stock with full knowledge of the conditions of which he complains."

In the opinion, of which the above quotation is the syllabus, the decisions by the Supreme Court of the United States in the following cases were cited, viz.: Hawes v. Contra Costa Water Co., 104 U. S. 450, 26 L. Ed. 827, and Dimpfel v. Ohio & Mississippi Railway Co., 110 U. S. 209, 3 Sup. Ct. 573, 28 L. Ed. 121, where it was held that to sustain a bill in equity, against a corporation by a shareholder, he had to allege that he was the owner of the stock on

which he claimed the right to sue, at the time of the transactions of which he complains, or that the stock devolved upon him by operation of law. That doctrine has since been adopted by the Supreme Court of the United States as a part of Equity Rule No. 94. The rule itself is, of course, not applicable here; but it declares a principle that is very appropriate, notwithstanding, in the appointment of receivers, our courts are governed by statute.

The learned counsel for the plaintiff argue that the plea of estoppel cannot apply to a case like this, where the complaint against which the plea is urged is that the party pleading the estoppel is violating a penal statute. They quote from Rawle's Revision of Bouvier's Law Dictionary, vol. 1, p. 694, the definition of "estoppel," by Gould, Chancery Pleading; that is, a plea which neither admits nor denies the facts alleged by the plaintiff, but denies his right to allege them.

The defendant, in pleading the estoppel in this case, neither admits nor denies the facts alleged by the plaintiff, but denies her right to allege them, because she has no other cause for complaint than that which she knowingly and intentionally purchased.

The learned counsel for the plaintiff also quote from Pomeroy's Equity Jurisprudence (3d Ed.) vol. 2, § 819, the doctrine that stockholders may be estopped, by their acquiescence, from objecting to the acts of the corporation which are not illegal nor mala prohibita, but ultra vires, when the rights of innocent third persons have intervened. Conversely, and manifestly, stockholders cannot be estopped, by their acquiescence, from objecting to acts of the corporation that are illegal or mala prohibita. A number of decisions are referred to in the plaintiff's brief in support of the doctrine that a stockholder cannot, by acquiescence, ratify, or be estopped to complain of, the acts of the corporation that are contrary to law or to any provision of the charter of the corporation. See Scovill & Annable v. Thayer, 105 U. S. (15 Otto) 143, 26 L. Ed. 968; Bostwick et al. v. Chapman et al., 60 Conn. 553, 24 Atl. 32; Ohio & Miss. Ry. Co. v. McCarthy, 96 U. S. (6 Otto) 258, 24 L. Ed. 693; Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55.

But the defendant's plea in this case is not that the plaintiff has condoned or acquiesced in any act of the corporation that was illegal or malum prohibitum. The plea or defense is that the plaintiff, in her capacity of stockholder, is not injured or aggrieved by the character and method of the business conducted by the defendant corporation, but, if injured at all, is injured solely by and in consequence of her own voluntary act of becoming a stockholder in the corporation.

If the plaintiff had a real cause for complaint, in her capacity of stockholder of the corporation—that is, a complaint which she had not voluntarily brought upon herself—she would undoubtedly have a right of action, and no one could question her motive in asserting that right. If the corporation should be adjudged, by any court of competent jurisdiction, to be pursuing a business contrary to law, in the precise language of the seventh paragraph of section 1 of the Act 159 of 1898, undoubtedly the plaintiff would have a right of action to demand the appointment of a receiver, whatever might have been her motive in purchasing stock in the corporation. But the corporation has not been adjudged to be pursuing a business contrary to law. The plaintiff, as a stockholder, sues to have the company so adjudged and outlawed, for a cause which she admits would not be of any financial interest or concern to her if she had not voluntarily, and with full knowledge of the conditions, become a stockholder.

The learned counsel for the plaintiff argue that the word "any," has such a comprehen-

sive meaning, in the seventh paragraph of section 1 of Act No. 159 of 1898, "at the instance of any stockholder or creditor," that it forbids any plea to the capacity of the plaintiff so long as he or she is a stockholder of the corporation. In support of that argument, a number of decisions are cited, where the word "any" was held to be synonymous with "all" or "every"; e. g., "any special matter" was held to mean every special matter; "any bank" was held to include a national bank; "any of the waters of the state" was held to mean all the waters within the state; "any election law" was held to include, not only the election laws in force when the statute in which the expression was used was adopted, but also election laws thereafter enacted; "any election" was held to mean a primary election, as well as a general election; and "any contract" was held to mean an implied contract as well as an express contract. Twenty pages, containing hundreds of illustrations of the various judicial interpretations put upon the word "any," according to the context or subject-matter of the phrase or sentence in which it is used, are to be found in 3 C. J. pp. 230–249, inclusive. For example, in a statute of Quebec, the expression, "this section does not extend or apply to any action or prosecution for the recovery of any penalty imposed by any act respecting the sale of intoxicating liquors," was held to mean any act of the Legislature of Quebec, and not to include an act of any other parliament, either Imperial or Canadian. The words "any attempt," in a testament in which the testator declared that his will should be inoperative if any attempt was made to withdraw his grandson from the custody of his executors, was held to mean any successful attempt, not an unsuccessful attempt. The words "any bank" were taken to mean any bank in the place where the promissory note in which the expression was used was made payable, and not to include any bank elsewhere in the world. The expression "any benefit," in a statute providing that, in assessing the damages resulting from the expropriation of property, due allowance should be made for "any benefit" that the owners might derive, was held to mean only any benefit resulting specially to the landowner, and not a benefit shared by the community in common with him. The expression "any creditors" was held to have the same meaning as "the creditors." The expression "any one creditor", in a statute limiting the jurisdiction of a justice of the peace to cases where the amount claimed by any one creditor did not exceed $100, was held to mean any one claiming under the same bond and affidavit, but not a creditor who had acquired three separate claims, none of which exceeded $100. A statute providing that a witness should not be disqualified by his conviction of any crime was construed to mean only such crime as, at common law, worked a disability to testify; that is, conviction of an infamous offense. The Supreme Court of Maine, in Cummings v. Everett, 82 Me. 260, 19 Atl. 456, construing a statute providing that the contracts of any married woman made for any lawful purpose should be valid and binding and might be enforced in the same manner as if she were sole, held that the statute did not include a married woman under the age of majority, although it was admitted in the opinion that literally the words "any married woman" included married female minors.

It would serve no useful purpose to incumber the report of the decision in this case with more of the illustrations, given in the reference books, of the various meanings of the word "any," as judicially interpreted according to the context of the phrase or sentence in which it is used. It is sufficient to say that, in our opinion, the expression, "at the instance of any stockholder or creditor," as used in the Act No. 159 of 1898, was not intended to abolish all defenses or pleas

to the capacity or right of a stockholder or creditor to sue for the appointment of a receiver of a corporation. To give the word a more comprehensive meaning than the context of the statute warrants, or the Legislature intended, would lead to an absurdity. It might as well be contended that a plea to the capacity of any stockholder or creditor, suing for the appointment of a receiver of a corporation, could not be maintained even though the plaintiff, being a stockholder or creditor, be an unauthorized married woman or a minor or an interdicted person. It is not likely that the Legislature had any idea, in using the expression "any stockholder or creditor," instead of "a stockholder or creditor," of abolishing all defenses or pleas to the capacity of a stockholder or creditor to maintain an action for the appointment of a receiver. Our opinion is that, if the Legislature had any special object or purpose in using the word "any," instead of the article "a," in the expression "at the instance of any stockholder or creditor," the purpose was to include any stockholder or stockholders regardless of the number or the amount of stock owned by him or them, and to include any creditor, whether an unsecured creditor, a mortgage creditor, a lien creditor, or a judgment creditor.

The learned counsel for the plaintiff contend that the doctrine announced in the Von Schlemmer Case, supra, is not applicable here, because the complaint is that the defendant is violating a penal statute. That difference in the two cases would render the decision cited inapplicable here if the defendant were pleading that the plaintiff is estopped by acquiescence. But that is not the plea at all. The plea is that the plaintiff has no cause for complaint, in so far as her interest as a stockholder in the corporation is concerned, because she acquired that interest with full knowledge of the facts and with the deliberate purpose of complaining. Her interest in complaining, and right to complain, of the commission of a crime or misdemeanor, is only such as is shared by the entire community or commonwealth. The criminal court, not the civil court, is the tribunal to which she or any other citizen must go for redress, to prevent a violation of the penal laws.

In Marks v. American Brewing Co., 126 La. 666, 52 South. 983, one of the complaints made by the plaintiff, as a stockholder, in asking for the appointment of a receiver of the defendant corporation, was that the corporation was violating the Gay-Shattuck Law, Act No. 176 of 1908, which prohibits a brewing company from being interested financially in, or from owning or leasing any premises for, a barroom. With regard to that complaint, the then Chief Justice, for the court, said:

"If the defendant has violated the provisions of a police regulation, it is not for plaintiff to invoke this law, as the state has her remedy, either civilly or criminally."

Our conclusion, from the plaintiff's admission, is that she has no more right or cause to complain of the character and method of the business conducted by the defendant corporation than she had when she, knowing the conditions and character and method of the business, bought stock in the corporation; and that she has no more right to demand the appointment of a receiver to take charge of the property and business of the corporation than if she had not bought the stock. Her right to insist upon an enforcement of the criminal laws, when she bought the stock, was no greater than that of any other citizen, and she did not, by buying the stock, acquire any greater right in that respect. It would not be in the interest of public policy, but would be a grave reflection upon other departments in our government, to hold that a private citizen can acquire, by purchasing stock in a corporation, a right —or that every citizen does not enjoy the

right—to demand that the corporation shall not violate a penal statute.

We have no doubt of the lofty motive of the plaintiff in buying stock in the defendant corporation; but she was mistaken in the remedy she adopted, as a private citizen, to redress what she believed to be a wrong. To permit her to redress a grievance that she acquired for the sole purpose of redressing it, by having a receiver appointed to take charge of the property and business of this corporation, would permit any person, not now financially interested in the affairs of the defendant company, to resort to the same method for a selfish or sinister motive or to redress an imagined grievance. Our conclusion is that the judgment appealed from is correct.

The judgment appealed from is affirmed, at the cost of the appellant.