For the reasons assigned, the judgment appealed from is affirmed.

(116 So. 675)

No. 28811.

ALLEN v. LLANO DEL RIO CO. OF NEVADA.

Feb. 13, 1928. Rehearing Denied April 9, 1928.

79       80

Sidney I. Foster, of Leesville, for appellant.

Ferguson & Newman, of Leesville, for appellee.

OVERTON, J. This is an appeal from a judgment placing defendant in the hands of a receiver, and allowing an attorney's fee of $2,500 for obtaining the judgment.

The grounds alleged for the appointment are: (1) That defendant is insolvent; (2) that defendant's directors are jeopardizing the rights of the stockholders by grossly mismanaging the business of the corporation, by committing acts ultra vires, and by misusing defendant's property; (3) that its board of directors has committed acts ultra vires, which have caused defendant to be sued for large sums of money, and by abusing and mistreating its stockholders; (4) that defendant's directors have caused to be placed of record against the corporation's most valuable property, in favor of themselves personally, bogus mortgages to secure debts to themselves, which they knew had no existence; (5) that the majority of defendant's stockholders are violating the charter rights of the minority and putting their interests in imminent danger by misrepresenting to the public the condition of defendant's affairs by inducing persons to come to the co-operative colony, conducted by the corporation, under false representations as to the living conditions in said colony, and as to the success of its management, and by committing acts ultra vires in attempting to eject from the colony stockholders and other members, because of their insistence that the corpora-

tion's business be conducted in a businesslike manner; (6) that the board of directors are jeopardizing the interest of stockholders by countenancing acts of immorality within the colony, such as men living with women to whom they are not married, and by countenancing other acts against good morals; (7) that defendant is unable to meet its current obligations, and has defaulted on the payment of funds deposited with it by its stockholders, which it held in trust for them; (8) that the board of directors has borrowed large sums of money, securing its payment by mortgage on the corporation's most valuable property, and has defaulted in the payment of interest on the loans; (9) that the board of directors has purchased with borrowed money expensive machinery, and permitted it to remain exposed to the weather, to the great loss and damage of the stockholders; (10) that the board has expended large sums of money in continuing and expanding ventures that were not profitable to the corporation, such as the culture of bees and the construction of additional chicken farms, when the board knew it should not have done so; (11) that the board has operated a general mercantile business for a number of years without requiring the manager of the business to furnish bond, and without carrying insurance on the stock; that the mercantile business, conducted by the board, has been very unprofitable, and the corporation has lost large sums of money on account of its mismanagement, and by the failure of the directors to require a bond of the manager and to carry insurance on the stock; (12) that the board publishes at the expense of the corporation the Llano Colonist, a weekly newspaper; that the board, in this paper, publishes false statements of the living conditions in the colony for the purpose of inducing innocent persons to purchase stock in the corporation, and does so induce them, thereby increasing the liabilities of the corporation without any benefit to it, and laying the corporation liable for prosecution for the publication of false statements; and (13) that the board of directors does not systematically keep account of the different departments of the business operations of the corporation, and does not systematically operate the business of the corporation with the view of making a profit for the stockholders, and that, by their loose, lax, and unbusinesslike methods, the capital invested by the stockholders has been absorbed, and the corporation is now insolvent.

Before answering, defendant asked that plaintiff be required to furnish particulars showing more specifically the facts upon which he rests his complaints. The court granted the request as to ground 6, relative to the countenancing of immorality in the colony, as to ground 7, relative to default in the payment of funds deposited with the corporation, as to ground 8, relative to default in the payment of interest on money borrowed, and as to ground 12, relative to the publication of false statements in the Llano Colonist, but refused to grant the request as to all other grounds. Plaintiff furnished the particulars ordered. These particulars we deem it unnecessary to recount in stating the pleadings. After the particulars had been furnished, defendant filed its answer, putting at issue plaintiff's demand. About this time some of the largest creditors of defendant, to whom was due a large part of the indebtedness standing against it, intervened, expressing their satisfaction with the management of the corporation, and resisting the appointment of a receiver.

Defendant is a corporation, which was organized in the state of Nevada, under the name of the Nevada Colony Corporation. Some time after it was created, its name was changed to the Llano Del Rio Company of Nevada. Some time in 1917 or 1918 it entered into a contract with the Gulf Lumber Com-

pany to purchase a large quantity of cut-over pine land, located in the parish of Vernon, in this state, its purpose being to establish and conduct a communistic or co-operative colony on those lands, and about the same time the corporation complied with the laws of this state, and was granted permission to transact business within its borders. The corporation had established and conducted a similar colony in California, and, when its operations ceased in that state, some of its members, if not most of them, followed its officials to Vernon parish for the purpose of establishing a new colony there, and established one under the name of New Llano.

The corporation has an authorized capital stock of $5,000,000 divided into 5,000,000 shares of the par value of $1 each. It is authorized to conduct various pursuits, including farming, the operation of a mercantile business and factories, and the publishing of papers and magazines.

While the charter says nothing about the co-operative or communistic features of the corporation, yet, when one desires to join the colony, he is supposed to pay at least $1,000 or its equivalent, and, if he has a wife, $200 additional, and, if he has children, $100 for each child, and to sign what is termed a "working contract." By this contract he is supposed to do such work from day to day as the management of the corporation may call upon him to do. For the work done he is given credit for so much a day, $1 of each day's earnings going to the payment of his subscription for 2,000 shares of stock, the remainder apparently being used by the corporation for his maintenance, for the corporation is supposed to provide him with food, shelter, and clothing, and to care for him in sickness. If he leaves the colony before paying for his stock, the contract provides that he shall forfeit the amount paid as well as the bonus earned by his work.

The plaintiff herein joined the colony while it was in California, and was with it when it moved to this state, but later left it. He signed a working contract with the corporation, which, while it is not exactly like the one stated above, is similar to it in its general outlines. He is at present the owner of stock in the corporation of the par value of approximately $3,000.

Plaintiff does not claim to be a creditor of the corporation, but sues for the appointment of a receiver as a stockholder. The act governing the appointment of receivers for corporations in this state is Act No. 159 of 1898. The grounds for their appointment are stated in the act in eleven paragraphs. Of these, only five confer the right on a stockholder to sue for the appointment of a receiver. The remainder confer the right exclusively upon creditors. The paragraphs conferring this right upon stockholders are paragraphs 1, 2, 3, 7, and 11. These are, to use the same numbers used in the act.

"1. At the instance of any stockholder, when the corporation has been legally dissolved and the appointment of a receiver to liquidate the affairs of the corporation has been requested by a majority in amount of the stockholders, provided the right of stockholders to liquidate the affairs of the corporation in accordance with the charter shall not be affected thereby.

"2. At the instance of any stockholder or creditor, when the directors or other officers of the corporation are jeopardizing the rights of stockholders or creditors by grossly mismanaging the business or by committing acts ultra vires, or by wasting, misusing, or misapplying the property or funds of the corporation.

"3. At the instance of any stockholder or creditor when the property of the corporation is abandoned, or when by failure of the stockholders to elect, or the neglect or the refusal of the officers to serve, there is no one authorized to take charge of or conduct its affairs. * * *

"7. At the instance of any stockholder or creditor when the corporation has been adjudged not organized according to law, or pursuing any business calling, or avocation contrary to law. * * *

"11. At the instance of any stockholder when a majority of the stockholders are violating the

charter rights of the minority and putting their interests in imminent danger." Section 1.

Of these grounds for the appointment of a receiver the first is not pertinent here, for the reason that the corporation has not been dissolved, nor is there any contention that it has. The ground, designated as the third, is also not pertinent, for the reason that there is no contention that the property of the corporation has been abandoned or that there is no one authorized to take charge of its affairs. The ground, designated as the seventh, is also not pertinent, because the corporation has not been adjudged as not organized according to law, or as pursuing a business calling contrary to law, nor is there any prayer that it be so adjudged. See In the Matter of John Lange Land & Improvement Co., 106 La. 466, 31 So. 51. This leaves the ground designated as No. 2, relative to gross mismanagement, the wasting and misusing of the company's assets, and the commission of acts ultra vires by the corporation's officers and directors, and the ground designated as No. 11, relative to the majority of the stockholders violating the charter rights of the minority, and thereby putting their interests in imminent danger, as the grounds on which plaintiff must depend, under the issues in the case, to obtain the appointment of a receiver.

The foregoing conclusion disposes of the alleged insolvency of the corporation as ground for the appointment of a receiver, upon which ground some stress has been laid by plaintiff. That ground is available only to a creditor suing as such. The only value that evidence showing the insolvency of the corporation may have in the suit of a stockholder, suing as such, is the value it may possibly have in showing mismanagement of the affairs of the corporation. Hero v. Consumers' Lumber Mfg. & Export Co., 123 La. 359, 48 So. 989. In the case at bar, plaintiff has nothing to gain by the evidence introduced on the question of insolvency. It appears that, when the company moved to this state, it had very few assets left, and was considerably indebted. A large part of the indebtedness that then existed, if not nearly all of it, has been paid. The corporation now owns considerable land and personal property, and, so far as the record discloses, has progressed since it has been here, especially under the present management. While it owes large amounts of money, yet the evidence shows that this indebtedness, with the exception of a small claim, concerning which some dispute arose, is not pressing. In fact, there is evidence in the record which, not including liability on stock, shows that the corporation at the time of the trial of this case was solvent. We therefore conclude that the evidence on the question of insolvency tends rather to show good management than to show the contrary.

One of the causes that prompted the trial court to appoint a receiver is that the board of directors, the manager of the corporation, and the stockholders, residing in the colony, have, in violation of the charter rights of the minority, operated the corporation on a communistic or co-operative basis, and not upon a basis that would result in profit to the individual stockholders in the way of dividends, whereas the charter nowhere provides for the operation of the corporation upon such a basis, but only upon the basis upon which an ordinary business corporation is conducted. Another cause that prompted the court to appoint a receiver was gross mismanagement by the directors and officers of the corporation, in that they failed to keep a proper and systematic set of books, and were not in position to show the cost of operating any of the various business departments of the corporation, or to say what any particular department had earned or lost.

It is true that the charter says nothing about the right of the corporation to operate upon a communistic basis, and there is nothing in it suggesting that manner of operation.

However, the record makes it clear that the corporation has been conducted on a communistic or co-operative basis from its creation, and that its purpose in reality is, and has been, to colonize its members as far as possible, to the end that all might work for the benefit of the whole, and thereby improve their living conditions by conducting the various businesses and callings authorized by the charter. This co-operative policy has been kept paramount at all times. All who became stockholders knew of it, including plaintiff, and we think it safe to say that it was this communistic idea that induced them to join. In these circumstances it would be improper to place defendant in the hands of a receiver on the ground here under consideration, when, at the time plaintiff became a subscriber, he had knowledge of these facts, and signed a working contract and became a member of the colony with that knowledge. He, himself, testified that he was willing to try the co-operative plan, but is not satisfied with the czar-like administration of the present manager—a character of administration which, we may here say, we think the record does not disclose. In our view, the ruling here made by us is supported by the ruling in Gordon v. Business Men's Racing Ass'n, 141 La. 819, 75 So. 735, L. R. A. 1917F, 700.

As relates to the failure to keep a full set of books, it appears that, while books are kept, yet that they are not so kept as to show the cost of production in the various departments of the company, and therefore it is impossible to say from them whether a department, such as the dairy or agricultural or milling department, is earning or losing money. However, as to the relations of the company with the outside world, and as to many matters within the colony, books are kept. At one time they were kept showing the cost of production and other items, now omitted, but in 1920 it was decided not to keep a full set, but to use most of the book-keepers to produce wealth, and thereby economize.

When the plan upon which this corporation is and always has been conducted is considered—a plan which we have said was known to all who subscribed to its stock—when it is considered that this plan does not have in view primarily the declaration of dividends, but better living conditions for stockholders residing in the colony, that the production is largely or entirely consumed by the membership, who live, as it were, out of a common treasury, the importance of keeping a full set of books ceases, and the failure to keep such a set should not be considered gross mismanagement, calling for the appointment of a receiver.

The trial court also considered that the failure of the board of directors to insure the property of the corporation against fire, the refusal of the board to accept an offer for timber that was blown down by a storm, the acquisition by the board of certain lands in another state, the agreement of the board to have the corporation secure a loan to be made by a bank to certain persons to enable them to purchase dental equipment to be used in another country, and the granting of a mortgage by the corporation on the authority of a resolution adopted by the board to secure members of the board for money loaned by them to the corporation, as omissions and acts showing gross mismanagement on the part of the board, calling for the appointment of a receiver.

So far as relates to the carrying of insurance, it appears that the company carries no insurance, except such as some creditor may require in selling property to the corporation on terms of credit, where a special mortgage is granted. The company owns considerable property, and considers it more in keeping with its principles to carry its own risks, and desires to do so. We find no ground for the appointment of a receiver here.

■ As relates to the refusal of the directors to accept an offer for timber that was blown down by a storm, it appears that the corporation received an offer for the timber of about $3 a thousand feet, but, after the directors had considered the matter, they concluded it would be best not to sell the timber, that they wanted it for their own purposes, and decided to erect a small mill, not only to saw that timber, which was considerable, but other timber. Some of the timber, by lying too long on the ground, became damaged by worms. It does not clearly appear whether the corporation will suffer a loss by the refusal of the offer, or by deciding not to sell. Assuming, however, that it will, the refusal was not such an act as may be characterized as gross mismanagement, and does not call for the appointment of a receiver.

■ As relates to the acquisition of land in another state, it appears that some people owning land in Mississippi desired to dispose of their land to the corporation and to become stockholders in it. The board of directors, after consulting the stockholders of the corporation residing in the colony, and after causing an inspection to be made of the land, concluded to accept it and to give five memberships in the organization for it. There is nothing that we are able to find in the voluminous record before us that would justify the conclusion that there was the slightest mismanagement in this transaction.

■ With reference to the consent of the board to have the corporation secure a loan to be made to certain persons to enable them to purchase dental instruments, all that the record seems to disclose, touching that matter, is that the board passed a resolution authorizing the president of the corporation to secure the loan. Whether the president ever attempted to carry out the purpose of the resolution does not appear.

■ With respect to the granting of a mortgage to secure members of the board of directors, the record shows that there was a resolution passed by the board to authorize the granting of a mortgage to secure certain members of the board and other stockholders who were not members of it, residing in the colony, for money loaned by them to the corporation. The evidence before us justifies the conclusion that the loans were actually made, and that the mortgage was granted to secure the loans, though the notes were not delivered until about the time of the filing of this suit. There is no reason why a corporation cannot borrow money from one of its directors and secure the loan by mortgage. Plaintiff, as a stockholder, in which capacity he sues, is not prejudiced by the granting of this mortgage, since, if the corporation should be liquidated, these creditors, even without the mortgage, would be entitled to payment before he would. There is no cause here for the appointment of a receiver.

[9] In addition to the foregoing causes, deemed sufficient by the trial judge for the appointment of a receiver we have considered the manner in which the Llano Colonist was published, which consisted in the publication of articles overstating the living and other conditions in the colony; the punishment of two juveniles by the board of directors for burglary and larceny; the permitting of persons in some instances to enter the organization without making the cash payment for stock, the corporation relying on their paying for the stock by work; the acceptance by the corporation from a member of the colony of money received by the member from the school board of the parish for teaching, when the member had taught only a part of the time for which he was paid; the alleged cancellation of debts of the corporation by the president, without authority; and the failure to pay a severance tax on timber, all of which are urged by plaintiff as calling for the appointment of a receiver, under the allegations of his petition showing mismanagement and the commission of acts ultra vires.

Cause is not here shown for the appointment of a receiver. The punishment of the two juveniles, it may be said, was not inhumane. Whatever violation of the law there may have been in that act, it is not for plaintiff to invoke by asking for the appointment of a receiver. There is adequate remedy otherwise. Marks v. American Brewing Co., 126 La. 666, 52 So. 983; Gordon v. Business Men's Ass'n, 141 La. 819, 75 So. 735, L. R. A. 1917F, 700. The same authorities will show that whatever violation of the law there may have been in receiving the money paid the teacher for teaching, when he did not teach, does not call for the appointment of a receiver, since there is an adequate remedy otherwise. Moreover, the ground of itself would not be sufficient. As relates to the alleged cancellation of debts without authority, the evidence is vague and unsatisfactory. Hence there is no ground here for the appointment of a receiver. With reference to the failure to pay a severance tax, if any was due, the failure was a mere oversight.

We have carefully read this voluminous record, consisting of six volumes, and our conclusion is that ground for the appointment of a receiver is not shown.

For the reasons assigned, the judgment appealed from is annulled and set aside, and plaintiff's demands are now rejected, plaintiff to pay the costs in both courts.