## No. 8174.

### HARVEY SHANNON VS. MRS. HANNAH LANE AND HUSBAND.

When property, at·the sale of the tax collector, was bid in for the State, and afterwards was redeemed by a mortgage creditor, by payment of the taxes for the amount of which it was adjudicated to the State, the owner, from whom the mortgage creditor claims back the redemption money, is not allowed to contest the original legality of the taxes.

The Ordinance of the Convention of 1879, for the relief of delinquent tax payers, affords no assistance, in that respect, to the party whose property has been redeemed as aforesaid.

APPEAL from the Eighth Judicial District Court, parish of Madison. D eloney, J.

### Farrar, Spencer & Farrar for Plaintiff and Appellee:

First—The right of redemption of property sold for taxes is expressly granted to the third persons having an interest.

Second—A third party, paying delinquent taxes due on property on which he held a mortgage, has a right to demand and recover the full amount paid by him, with twelve per cent interest from date of payment. Act 96 of 1877.

Third—The. owner of such property cannot plead in bar of repayment illegal assessments made by the parish authorities. If any illegal assessment has been made, recourse must be had against the parish,

Fourth—The Tax Collector is not clothed with judicial authority, and must collect under and in accordance with the assessment rolls placed·in his hands.

### A. L. Slack and J. B. Stone for Defendants and Appellants:

First—Prior to 1877, a Police Jury could not levy a tax for "any purpose" exceeding 100 per · centum of the State tax proper, which was at that time four mills. Acts of 1872, p. 56; Acts of 1877, p. 158, Sec. 103. 29 An. 1.

Second—A Parish tax before 1877, exceeding four mills was extortionate—levied in contravention of a prohibitory law—and consequently, the excess, over this limit was null and void.

Third—Police Juries are political corporations—the mere creatures of the Legislature—and' possess no power, but·those delegated by law. 3 An. 309; 9 An. 44; Blackwell's Tax Titles, p. 448; Cooley's Limitations, 517, 518, 521; R. C. C. 433.

Fourth—Where A, under the provisions of the late Constitutional Ordinance for the relief of delinquent taxpayers, pays B's taxes, A can recover of B no more than what the Tax Collector himself could have legally demanded. In such a case the act of A cannot estop B from setting up the illegality of the taxes.

Fifth—One to be estopped must be a party, or privy, to the transaction. The voluntary act of A cannot estop B. One can be estopped by his own act of omission or commission, where others are injured or defrauded thereby. In this case if plaintiff is injured it is the result of his own act, not the defendant's.

Sixth—The doctrine of estoppel does not apply where there is no fraud. 2 Story Equ. 10 Ed., Sec. 1543. Estoppels are not favored in law. 30 An. 1309. 22 An. 368. 1. Gr. Evi., Sec. 204 and note. Big. on Es., p, 293, Nos, 3, 4 and 5. Estoppel is invoked as the means of promoting fair dealing and rebuking fraud. Is it promoting fair dealing and rebuking fraud to prevent a defendant from setting up a legal defense ?

Seventh—One cannot be subrogated to a tax title that was annulled by payment of the taxes.

Shannon vs. Lane and Husband.

Eighth—All a delinquent or "interested party," under the Constitutional Ordinance was required to pay were the "taxes due." Illegal parish exactions, levied in violation of law, are not "taxes due," for the reason they cannot be legally enforced, and hence, if not collectible, not due. C. P. 1.

Ninth—Where one can enjoin a seizure for illegal taxes, he has equally as great a right, when sued for the same taxes, to set up as a defense to the suit what he could by injunction.

Tenth—One who pays the taxes of another is not subrogated to the rights or privileges of the State; subrogation cannot take place except in the cases provided by law. Taxes are not debts. 26 An. 697.

The opinion of the Court was delivered by

FENNER, J.   Defendant was delinquent in the payment of State and parish taxes upon a plantation owned by her, for the years 1872, 1873-4-5-6 and 7, and was duly entered upon the delinquent lists for said years, which were regularly recorded as required by law.   In 1878 the tax collector, after advertisement and compliance with all other requirements of law, exposed the same at public sale for payment of said delinquent taxes, and the highest bid being insufficient to pay the taxes with costs, charges, interest and expenses, the property was bid in for the State and adjudicated to her.

In February, 1880, plaintiff, a creditor of defendant, with mortgage on the plantation referred to, came forward and redeemed the property by paying the taxes for which the property had been sold, and the subsequent taxes thereon.

These amounted to $1850 58, and he brings this suit to recover the same from the defendant as the owner of the property.

Defendant admits her liability for the amount of State taxes paid for her account by plaintiff, but disputes the amount of the parish taxes on the grounds that the same were illegal, excessive and more than the parish itself could have collected from her, and that plaintiff, as her *negotiorum gestor*, had no right to pay more than she owed and can collect from her no more than she did so owe.

She relies upon the decision of this Court in the case of Lafitte vs. Morgans, 29 An. 1, where it was held that, under the Act of 1872, the police jury of the parish had no right to levy a tax in excess of four mills on the dollar and the school tax, without first obtaining the sanction of a majority of the voters at an election held for that purpose. She shows that the parish taxes, levied for the years prior to 1877, and paid by plaintiff, largely exceeded that rate, and claims that, to this extent, the payment by plaintiff did not enure to her benefit and cannot be recovered from her.

We cast no reflection upon the decision in Lafitte vs. Morgans, which we think correct, and if, as in that case, defendant was now enjoin-

ing the sale of her property by the tax collector for the enforcement of these illegal parish taxes, we should grant the relief there awarded.

We think, however, the defendant has let go by the *utile tempus*, within which she might have successfully urged defences against these excessive taxes, and she cannot now set them up against this plaintiff.

Proceedings for the assessment and collection of taxes are assimilated, in many respects, to judicial proceedings, for which they are regarded as substitutes. The assessment, the record of the delinquent lists and the tax collector's sale are the respective equivalents of judgment, seizure and execution sale.

The law is careful to surround all these proceedings with requirements as to notice, delays, and other formalities, intended as safeguards for the taxpayers, and to afford them ample opportunity to protect themselves against unlawful exactions. With these requirements this Court has enforced the most rigorous compliance as a condition of the validity of such proceedings.

It is not pretended that there has been, in this case, the slightest deficiency of perfect regularity in all the proceedings for the assessment and collection of these taxes, or that, in the whole course thereof, the defendant, though duly notified, made any objection thereto.

These regular proceedings culminated in a sale of the property at public auction, open to all bidders. Had the property been adjudicated, at a price, to any third person, the law is clear that the owner could only have redeemed it by paying to the party purchasing the amount of the purchase price with interest.

Act 96 of 1877, Sec. 57.

Section 58 of the same act, however, provided that if the highest price bid should be "an amount insufficient to pay the licenses and taxes *so proceeded for* in such cases," then the collector shall "bid the same in for the State, and such property so bid in for, the State may be redeemed, *as in other cases of tax sales, with the right of redemption.*"

This puts the State in the position of a purchaser at the price of the taxes "proceeded for," and subjects the owner's right of redemption to the same rules laid down in the preceding section as to any other purchaser, to wit, repayment of the purchase price. This is made still more clear by section 62 of the act, which authorizes any person interested to redeem property so bid in for the State, by paying "the taxes for which the same *were returned*, etc."

These and all other provisions of the act subject the right of redemption to the condition of paying the taxes "proceeded for," or for which the property "was returned," that being, in effect, the purchase-price at which the property was bid in for the State, and they exclude the idea of any right to contest the original legality of those taxes.

It is perfectly clear that, under this statute, neither the owner nor any other person interested could have redeemed this property without paying the amount of the taxes "proceeded for" and for which "the property was returned," without reference to their original legality.

It is contended, however, that the Ordinance of the Convention of 1879 for the relief of the delinquent tax payers, was in force at the date when plaintiff herein redeemed this property, and that the rights of the parties must be governed thereby.

We think this proposition is correct, and cannot assent to plaintiff's assertion that under article 259 of the Constitution, the act of 1877 remained in force until April 1880, and that this ordinance only then became operative.

The ordinance referred to is not a part of the Constitution and was not submitted to the people for ratification. It was an independent legislative enactment of the Convention and took effect as soon as promulgated, and repealed all laws inconsistent with it.

We cannot, however, give it the effect, sought to be deduced from it by the defendant, of enabling her or any interested person, desiring to redeem lands bid in by the State, to go behind the tax sale and contest the validity of the taxes for which the land was sold. Its manifest purpose, and the extent of the relief intended to be afforded to delinquent tax payers, were simply to remit all interest, penalties, costs and charges, and to enable them to redeem their property by paying the principal of the taxes and licenses for which it had been sold, and of the other licenses and taxes since due.

It is true the language of the act gives the right of redemption on payment of "the principal of all taxes and licenses that may be *due* thereon at the date of redemption;" but we cannot interpret the word "due" as having the effect to reopen questions as to the original legality of taxes, closed by the regular proceedings of assessment and collection and final sale thereunder, having as to such questions, in our opinion, the effect of the thing adjudged.

The plaintiff here had the right to redeem. The tax collector was not a judicial officer, having authority to adjudicate upon questions affecting the legality of taxes. He was a mere ministerial officer only empowered to collect the taxes as they appeared on the assessment rolls. Plaintiff could not have redeemed, and the tax collector had no authority to permit him to redeem, otherwise than by paying the taxes assessed. Defendant would have been in no better position.

We think, however, defendant is entitled to the benefit of all the advantages conferred upon her by the ordinance so far as her pleadings claim them.

The judgment properly allows her credit for the difference between

the face, and the actual, value of the parish warrants paid in by plaintiff, and properly disallowed any but legal interest on plaintiff's claim.

It should also have allowed the discount for payment anterior to January 1st, 1881, as provided by the ordinance, amounting to $75 33, and must be amended accordingly.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be reduced in amount from $1747 40 to $1672 07, and that, as thus amended, it be affirmed, appellee paying costs of this appeal.

Rehearing refused.