(58 South. 847.)

No. 19,298.

WILLIAMS v. BOARD OF COM'RS OF BAYOU SALE DRAINAGE DIST. et al.

(April 22, 1912.   On Rehearing, June 14, 1912.)

*(Syllabus by the Court.)*

1. DRAINS (§ 71*)—ASSESSMENTS—VALIDITY.
    The result would be, if the tax were declared legal, that the amount realized from the tax would be used in improving, in round figures, 11,000 acres of land in a district in which there are 50,000 acres, without any positive assurance that in time the remaining 39,000 acres would receive equal benefits.
    [Ed. Note.—For other cases, see Drains, Cent. Dig. § 74; Dec. Dig. § 71.*]

2. CONSTITUTIONAL LAW (§ 308*)—PRESCRIPTION—NATURE IN GENERAL.
    Prescription will not be of any avail if by it the organic law which guarantees equal rights would be violated.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 925; Dec. Dig. § 308.*]

On Rehearing.

3. DRAINS (§ 67*)—CONSTRUCTION AND OPERATION—EFFECT AS TO PRIOR STATUTES.
    Article 281 of the Constitution of 1898 as amended in 1908 (Act No. 300 of 1908) was, in 1910, amended and re-enacted (Act No. 197 of 1910) so as to authorize the issue of drainage bonds where levees and pumps are required for the drainage of lands upon a petition of not less than a majority in acreage of the property taxpayers, resident and nonresident, in the area to be affected; provided that acreage taxes for all purposes shall not exceed $3.50 per acre.
    The adoption and promulgation of this amendment repealed all prior conflicting laws relative to drainage districts, and arrested all further proceedings for the issue of bonds, on the vote of property taxpayers, in districts where levees and pumps are required for drainage purposes.
    [Ed. Note.—For other cases, see Drains, Cent. Dig. § 73; Dec. Dig. § 67.*]

4. DRAINS (§ 71*)—ASSESSMENTS—VALIDITY.
    Even under the laws in force prior to the adoption of the amendment of 1910, general taxes and assessments could not be lawfully levied and appropriated for the benefit of a particular section of a drainage district.
    [Ed. Note.—For other cases, see Drains, Cent. Dig. § 74; Dec. Dig. § 71.*]

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Charles A. O'Neill, Judge.

Action by William F. Williams against the Board of Commissioners of Bayou Sale Drainage District and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Wm. Winans Wall and Frank L. Richardson, for appellants. Johnston Armstrong, for appellee. D. B. H. Chaffe, amicus curiæ, on behalf of J. F. Coleman & Co. Wm. C. Dufour and H. Generes Dufour, amici curiæ.

BREAUX, C. J.   Plaintiff brought this action to have annulled the proceedings of the Board of Commissioners of the Bayou Sale Drainage District; also, the drainage and reclamation tax the board was proposing to have collected.

The board consists of five commissioners, and at the inception of their proceedings, to submit the propositions to the property taxpayers for them to determine whether or not

a property tax should be levied, they prepared questions and submitted them to the property taxpayers.

The first was, in substance: Shall an annual contribution or special acreage tax of 25 cents per acre be levied on all lands in the Bayou Sale Drainage District?

The second: Shall an annual five mills tax on the dollar ad valorem be levied on all the property of the district?

The last question was: Shall the drainage district be authorized to contract debts and issue gold bonds?

The voters, by their votes, answered in the affirmative.

Afterwards, the last question submitted was recalled, for the reason, as the commissioners thought, there was illegality in the proposal to pay the bonds in gold coin; there was also an illegality in matter of the dates of the maturity of the bonds. This was done, it was said, in order to conform with Act No. 197 of 1910.

In December, 1911, plaintiff, owner of 1,160 acres of land in the drainage district, brought this suit. He alleged, substantially, that it was not intended, nor was it possible, to expend one cent of the tax to drain and reclaim his land, and that he was none the less called upon to pay for reclaiming and draining other lands than his own; that the tax is to be expended in reclaiming sections 1 and 2 of the district, in which his (plaintiff's) land is not situated.

The following are the points we gather from plaintiff's petition:

That no petition, as required by law, in force at the time, was presented by a sufficient number of property taxpayers, for the holding of an election to determine whether or not a tax should be levied. That the commissioners, before ordering an election to be held, did not concern themselves about the cost of draining the whole district, but about the cost of draining lots 1 and 2.

That the funds realized on the bonds to be issued will not be sufficient to pay the costs of draining and reclaiming the whole district, if defendants were to attempt anything of the kind; but such is not the intention.

Furthermore, the last proposition of plaintiff is that there is no authority to issue bonds payable in gold.

The testimony shows that there are only marsh lands in the district, except a strip on each side of Bayou Sale, with which we are not concerned, for the issues are only of sea marsh. The sections 1 and 2, before mentioned, are limited in area as compared with the remainder of the district. The difference is 41,000 acres in the latter to 11,000 acres in the former.

We take up the last objection to the tax (as urged by plaintiff) first; that is, the issue relating to the payment of the bonds in gold, as it is disposed of in a moment.

It does not present an issue to be decided; as before mentioned, that objection was met by an amendment which was ratified by the few property taxpayers of the district at the election held for the purpose.

Returning to the first of the objections urged by plaintiff, viz., no petition, as required, was presented to the board of commissioners asking them to call an election: Beyond all question, this is an illegality if the old law has not been superseded by the new. We will not discuss that issue. There is no necessity of deciding it. The old law having been repealed while the proceedings to tax the property taxpayers were pending before the commissioners (or immediately afterward), there is not a remote probability that the question will ever arise in other cases hereafter. There are other grounds of nullity that dispose of the case whether or not a petition was presented by the taxpayers.

We take up the other propositions for decision. ·

[1] Taking up the first for decision; that is, that measures should have been adopted to reclaim and drain the *whole* district: This presents a very important issue. The necessity or advisability of draining the whole district should have been considered, and everything in reason should have been done with the view of draining the whole district. A general plan with reference to money to be expended and work to be done in the whole district should have been adopted. This was not done. This plan should have been adopted in the first place; its want afterward is not supplied by saying to other property owners other than those to be benefited:

"Wait, abide your time, as much will be done for you later."

Although said with the best intention doubtless, they are words easily forgotten, or by which successors of the present board might not choose to be governed. These uncertainties can easily be avoided by acts looking to the general benefit of all owners of land, by the adoption of general plans and measures relating to the whole district.

In deciding the issues above, we have anticipated to such an extent that there is no necessity of dwelling further on other issues presented by plaintiff, except to say, as relates to the last objection to be decided, that the funds so realized from the sale of the bonds will not be sufficient to drain the whole district, that this objection of plaintiff is amply sustained by the evidence.

[2] The defendants interposed the prescription of 60 days under the statute now in force, and the prescription of 6 months under a former statute since, in great part at least, superseded.

The right which defendants urge is not barred by prescription. It is a vested right. It is the right of property not to be disturb-ed except according to law. Now, whether we consider the six months' prescription, or the two months' prescription, plaintiff's right is not prescribed. There would be no process of law in this case were we to hold otherwise. One person's property cannot be taken without consideration for the benefit of another. The property taxpayer cannot be compelled to pay taxes on his land in the interest of other landowners. The right to insist in some measure to a division of benefits is not subject to prescription. There are interesting pertinent passages in Marcade on Prescription. To borrow from the original:

C'est plus qu'un droit, c'est une faculté.

The commentator seeks as much as possible to characterize the importance of the right by using the words, *C'est une "faculté,"* not subject to prescription.

The trend of recent legislation supports our view. Although not directly applicable, we refer to Act No. 317 of the General Assembly of 1910. Section 1 of the act:

"Such subdrainage districts however, shall be composed only of lands that are benefited by the particular reclamation or drainage that is proposed to be inaugurated for the purpose of draining the same."

Under the present law, the question is settled; for, even without it, it cannot be legal. One portion of a district, by far the largest, cannot be made to contribute to the cost of reclaiming another portion.

At first we sought to point out the particular statutes and the particular sections with which defendants had complied, and those with which they had not complied. In the end, we abandoned the statements in that regard and remained content to rest the case on points as above stated.

For reasons stated, the judgment is affirmed.

### On Rehearing.

LAND, J. [4] Our learned Brother below, in a well-considered opinion, decided

the case in favor of the plaintiff on the ground that the attempt of the board of commissioners to apply the entire proceeds of the bonds to the reclamation and drainage of subdivisions 1 and 2 was illegal. There was nothing in the proposition submitted to the property taxpayers indicating that the entire proceeds of the tax would be devoted to the drainage and reclamation of said subdivisions. The board of commissioners, on the advice of their engineer, undertook to reclaim subdivisions 1 and 2 with the proceeds of the bonds, and let out contracts for the purpose. The proposed work will consume the entire proceeds of the bond issue voted by the taxpayers. The result is that the seven other subdivisions of the drainage district will receive no benefit from the taxes voted and levied to pay the interest on said bonds and their ·principal at maturity. The five commissioners and the plaintiff constituted the entire electorate of the drainage district, and the former own lands in subdivisions 1 and 2, and the latter owns lands in subdivision 4. Plaintiff very naturally complains of taxation for the exclusive benefit of a small section of the district and finds no consolation in the suggestion that, hereafter, the electors residing in subdivisions ·1 and 2 may be magnanimous enough to vote taxes and bonds for the reclamation of his subdivision. The judge a quo pointed out that the ·action of the commissioners in ·the premises was in violation of the provisions of Act No. 305 of 1908, providing for .the creation of subdivisions of drainage districts, for undertaking, prosecuting, and maintaining special drainage works within such subdivisions, and for the manner of raising revenues, etc. That statute draws a clear line of distinction between general drainage work within the district and special drainage work within a subdivision, and between general drainage taxation and special taxation for the benefit of subdistricts.

In the case at bar we have the anomaly of a subdistrict supported by general taxation. ·We do not think that the lawmakers ever contemplated that an entire drainage district should be taxed ·for· the reclamation of one or more of its subdivisions.

Plaintiff does not complain that his lands will not be benefited by a general drainage system, and therefore the De Gravelle Case, 104 La. 703, 29 South. 302, and other cases on the same line, are not in point. Plaintiff's complaint is that his lands are taxed for the special benefit of lands in other subdivisions of the district. If the district cannot be drained under some general plan, then resort should be had to Act No. 305 of 1908.

[3] The tax of 5 mills and the acreage tax of 25 cents per acre exhausted the powers of taxation vested in the board of commissioners under article 281 of the Constitution, as amended in 1908. See Joint Resolution, Act No. 300 of 1908, p. 450. The first election on the proposition to incur debt and to issue bonds was held in August, 1910. Article 281 was further amended at the November election in 1910, so as to raise the ad valorem tax limitation to 10 mills, and the acreage tax limitation to 50 cents per acre. The article was further amended so as to authorize the issue of drainage bonds where levees and pumps are required, upon a petition of not less than a majority in acreage of the property taxpayers, resident and nonresident, in the area to be affected; provided that acreage taxes for all purposes shall not exceed $3.50 per acre.

It is conceded that the Bayou Sale District cannot be drained without the use of pumps and levees and the expenditure of very large sums of money. The bond issue of $150,000 is ·hardly sufficient to drain the comparatively high lands in subdivisions 1 and 2. The work in these subdivisions will not benefit the other seven unless provision

is made for the drainage of the whole area. Whether such provision will ever be made will depend on the future action of a majority in acreage of the property taxpayers of the district.

The constitutional amendment of 1910 contemplates that the question of drainage where pumps and levees are required should be determined by a majority of the property taxpayers as above stated. This organic law was in force when the second election on the question of a bond issue was held in the Bayou Sale Drainage District.

All laws in conflict with the provisions of the constitutional amendment of 1910 were repealed and abrogated from the date of its adoption and promulgation. It follows that, quoad lands requiring pumps and levees for drainage, prior laws authorizing the imposition of taxes and local assessments were repealed. In the case at bar no vested rights were disturbed, as no bonds had been issued.

Judgment affirmed.