### (87 South. 25)

### No. 22848.

### DUFFY v. PENEGUY.

(May 31, 1920.   On Rehearing, Jan. 3, 1921.)

*(Syllabus by Editorial Staff.)*

1. **Taxation** ⊨692—**Validity of tax cannot be collaterally attacked in proceedings to which collector is not a party.**

Where taxes demanded are not due or legal, the taxpayer may enjoin the collector from selling his property, but he cannot stand by and permit the sale to a third person without notice and subsequently attack the sale collaterally, where not based on an absolute nullity, in an action to which the collector is not a party, such sales being received in evidence as prima facie valid under Const. art. 233. (Per Monroe, C. J., and Sommerville, J.; O'Niell and Provosty, JJ., dissenting.)

2. **Taxation** ⊨800(1)—**Owner permitting sale for illegal tax may not subsequently attack for latent, nonapparent causes without reimbursing purchaser.**

In view of Act No. 170 of 1898, § 56, providing for injunction to restrain the collection of unlawful taxes, and Const. art. 233, relating to setting aside tax sale judgments, where the owner did not institute any proceedings, but permitted the sale and has not reimbursed the purchaser, he cannot thereafter attack the sale because of the illegality of a part of the taxes, for latent, nonapparent causes that might have warranted enjoining the illegal part prior to sale. (Per Monroe, C. J., and Sommerville, J.; O'Niell and Provosty, JJ., dissenting.)

3. **Drains** ⊨74—**One knowing improvement tax conditions when purchasing estopped to object subsequently thereto.**

Where one purchased land in a district with full knowledge of improvement taxes brought about by the owners of the property within the district, he is estopped from questioning existing conditions at the time of purchase. (Per Monroe, C. J., and Sommerville, J.; O'Niell and Provosty, JJ., dissenting.)

### On Rehearing.

4. **Drains** ⊨82(1)—**District officers' decision as to benefit of land reviewable only for abuse or fraud.**

A determination whether a particular tract is improved or benefited by being included in a gravity drainage taxing district, or the extent of improvement or benefit of any particular tract, is a function of the district's governing authorities, and their decision is not subject to court review except upon allegations of fraud or of such an abuse of discretion as would be equivalent of fraud, which must be pleaded.

5. **Drains** ⊨82(1)—**Allegation that drainage tax was confiscatory and without due process held not to authorize judicial review of question of benefit.**

An allegation merely that the sale of defendant's property for drainage tax was a confiscation or taking of property without due process and without compensation will not warrant a court investigation of the question of improvement and benefit of any particular property in the taxing district by the general improvement for which the taxes were imposed.

6. **Drains** ⊨82(1)—**Courts may not annul tax fixed by district officers as to particular piece of land.**

When the district officers have faithfully and conscientiously determined as to the general improvement of the land included in a gravity drainage district made under Const: art. 281, as amended by Act No. 197 of 1910, and pursuant to Act No. 192 of 1914, the tax must be borne by the land in the ratio fixed, and the court can not annul the tax on any particular piece of land merely because in its judgment that tract was not improved or benefited to the extent anticipated by the governing authorities.

7. **Drains** ⊨82(2)—**Drainage tax not subject to collateral attack where authorities levying and bondholders are not parties.**

A drainage tax and the bonds into which it was funded are not subject to collateral attack in a proceeding in which the authorities who levied the tax and the holders of the bonds are not parties defendant.

DUFFY v. PENEGUY

**8. Taxation ⬤796(2)—Defendant in suit to quiet title estopped from attacking legality of tax which if illegal would destroy his own title.**

In a suit to quiet a tax title, defendant is estopped to attack collaterally the validity of a drainage tax for illegality, which objection, if well founded, would destroy his own title to the land in contest.

Appeal from Twenty-Ninth Judicial District Court, Parish of St. Bernard; R. Emmet Hingle, Judge.

Suit by Frank J. Duffy against Harry J. Peneguy. Judgment for plaintiff, and defendant appeals. Affirmed.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellant.

Wm. Winans Wall, of New Orleans, for appellee.

SOMMERVILLE, J. Plaintiff sued Harry J. Peneguy, defendant and appellant, to quiet a certain tax title acquired by him under the provisions of Act 101 of 1898, p. 127. Peneguy claimed to be the owner of the property in question at the time the suit was filed.

Plaintiff alleged that the sale by which he acquired title was made by the sheriff and ex officio tax collector of the parish of St. Bernard for the taxes of the year 1914, assessed in the name of Xeter Realty, Limited; the tax sale having been made on June 26, 1915, and recorded in the conveyance records of St. Bernard parish on July 7, 1915. This suit was instituted more than 12 months after the sale.

Defendant answered, setting up the invalidity of the sale made to plaintiff or his author, and contended that the drainage taxes, which formed part of the taxes for which the property had been sold, were illegally levied. This contention was based upon two propositions: (1) That the land in question is marsh, and therefore a tax could not be levied at an election; and (2) want of benefits.

Plaintiff offered in evidence two tax deeds by which he acquired title to the property described in his petition of date July 7, 1915, for the taxes of 1914, including the state, levee district, parish, state good roads, Confederate veterans, road and bridge, Bayou Terre-aux-Bœufs taxes, with interest and costs. He also offered in evidence an act of sale passed before Charles Schneidau, notary public, on July 23, 1914, which showed the purchase of the same property from Xeter Realty, Limited, by defendant, Peneguy, and two acts of sale by the sheriff and ex officio tax collector for the parish of St. Bernard, showing that the Xeter Realty, Limited, had purchased the property in contest on June 28, 1913, for the taxes of 1912; the taxes being itemized as set forth above in the deeds of both plaintiff and defendant.

It would therefore appear that the title of Xeter Realty, Limited, the immediate author of defendant, is based on the same delinquent taxes as the sale to Frank J. Duffy, plaintiff, with the single exception that the sale was made to Xeter Realty, Limited, for the taxes of the year 1912, whereas plaintiff's title is based on the taxes for the year 1914.

On the trial counsel for defendant offered evidence attacking the legality of the drainage taxes, upon which both plaintiff's and defendant's titles are partly based, because the property in contest had not received any benefits from the drainage district, which the board of drainage commissioners, duly authorized by the taxpayers and voters of the district, had undertaken to install. To the reception of such evidence counsel for plaintiff interposed the following objections:

"Counsel for plaintiff objects to the reception of the evidence for the purpose of proving paragraphs 11, 12, 13, 14, and 15 of the answer (the other paragraphs having been abandoned) for the following reasons:

"(1) Because the defendant has let go by the utile tempus within which he might have successfully urged defenses against the legality of the drainage taxes, and he cannot now

set up as a cause for annulling plaintiff's executed tax title a collateral attack upon the drainage taxes, forming a part of the taxes to satisfy which sale was made.

"(2) Because, under no circumstances, is a collateral attack upon a tax levied by a subdivision of the state in strict conformity with the Constitution and laws of the state permissible. A tax so levied can only be contested in a direct proceeding against the authority levying it prior to a sale of the property (against which the tax is assessed) in enforcement of the tax. Where the property owner stands by, and after notice, permits his property to be sold to a third person, an objection to the legality or constitutionality of the tax cannot be entertained in a proceeding to set aside the tax sale, the owner being estopped by his conduct and acquiescence.

"(3) Because the defendant purchased said property from Xeter Realty, Limited, and Xeter Realty, Limited, acquired the same at a tax sale made in satisfaction of the acreage taxes levied by the Bayou Terre-aux-Bœufs drainage district and other taxes, the said acreage tax, upon which plaintiff's title is based, having been prior thereto authorized by the same authority and voted at the same election and levied by the same proceeding as was the acreage tax of the Bayou Terre-aux-Bœufs drainage district, upon which defendant's tax title is based, and defendant is therefore estopped from contesting the legality or constitutionality of the said acreage taxes.

· "(4) Because, in the absence of a charge of fraud or palpable abuse on the part of the legislative department in creating a taxing district, the judicial department of the government is without jurisdiction to review its finding of benefits to result from the levy of a forced contribution or special assessment throughout such district, which finding of benefits is to be found in the creation of a taxing district and the authorization to levy the tax."

It would appear from the record that either plaintiff had a valid title, or that both plaintiff and defendant are without title, because the attack made by the defendant on plaintiff's title is just as applicable to his own as it is to that of plaintiff. Defendant here urges illegality of the tax by which plaintiff acquired title as a cause for setting aside the sale when his own title is based on a sale made for a different installment of the same debt or tax maturing in a different year. It would thus appear that he, as a purchaser of property, who had assumed as a part of the purchase price a series of mortgage notes imposed on the property, and in the face of his assumption, after having acquired the property, sought to repudiate the very debt forming the consideration of his purchase, for causes going to the validity or invalidity of the debt so assumed. Defendant appears to say:

"I bought this property for the installment of the bonds falling due in 1912, or for the taxes of that year. Since I purchased it another installment has fallen due which I neglected to pay. Now, because the whole debt, including all installments, is void and invalid, the plaintiff has no title to the property which he bought for the nonpayment of the installment which I neglected to pay."

We must hold that defendant cannot attack his own title in such way. He is estopped from doing so by deed, as urged by plaintiff in his objections to the evidence.

[1] Counsel for defendant rely upon the paragraphs of their petition, which, in substance, assert:

The tax sale is illegal because a part of the taxes for which it was made, although levied by a subdivision of the state of Louisiana, by authority of the Constitution and laws of the state, is illegal, for two reasons:

(1) Because the property has received no benefits from the special acreage tax of 16 cents per acre levied by the board of drainage commissioners of the Bayou Terre-aux-Bœufs drainage district for the year 1914, which tax has been funded into an issue of $500,000 of bonds, issued for the purpose of paying for a general system of drainage provided by said board of drainage commissioners.

(2) Because there was no power or authority vested in the board of drainage commissioners to levy a special acreage tax on prop-

erty situated in the drainage district, where levees and pumps were required to completely drain such property.

The attack made by defendant on plaintiff's tax title is a collateral one; and it is not based on an absolutely void title, the nullity of which is apparent on the face of the title. The proceedings before the sale appear to be entirely regular and in good form. The attacks made in the answer were originally against all the taxes; but they are now limited to the drainage taxes.

The law contemplates that an attack on taxes and tax sales should be by direct action against the tax collector and the subdivision of the state levying the tax, and not in an action between individuals to which action the tax collector is not a party; and the judgment therein rendered could not affect the tax itself or the tax collector.

"All deeds of sale made, or that may be made, by the collectors of taxes, shall be received by courts in evidence as prima facie valid sales." Constitution, art. 233.

If the taxpayer has the belief that all of the taxes demanded from him are not due or legal, he may go into court and enjoin the tax collector from selling his property; but he cannot stand by and permit the state to sell his property to a third person without notice of any kind, and subsequently attack the sale collaterally or for other than absolute nullities.

[2] Section 56 of the Revenue Act (No. 170 of 1898, p. 374) says:

"No injunction restraining the collection of any tax or taxes shall be issued by any court unless a bond shall first be given, by the taxpayer enjoining, with good security for an amount equal to that of all taxes, interest, penalties and costs of the amount of taxes contested, and fifty per cent. additional thereon included, and no injunction shall issue except to enjoin the collection of that portion of the tax which may be in contest and no injunction shall issue against the collection of that part or portion in contest until the taxpayer shall have produced and filed the tax collector's receipt showing that the taxpayer has paid that portion of the tax which is not in contest, and which the taxpayer acknowledges to be due."

And the Constitution says again in article 233:

"No judgment annulling a tax sale shall have effect until the price and all taxes and costs paid, with ten per cent. per annum interest on the amount of the price and taxes paid from date of respective payments, be previously paid to the purchaser: Provided, this shall not apply to sales annulled on account of taxes having been paid prior to the date of sale, or dual assessments. * * * No sale of property for taxes shall be set aside for any cause, except on proof of dual assessment, or of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption has expired."

Defendant did not institute suit to set aside the sale of his property at any time, and he has not paid to plaintiff, or offered to pay him the price, taxes, and costs with interest paid by the plaintiff. That amount paid by plaintiff includes the very taxes which defendant here seeks to contest the validity of.

To the reception of all evidence in support of the allegations contained in defendant's reconventional demand plaintiff urged the foregoing exceptions. Defendant not only asked that the sales made to plaintiff be declared null, but, "further, that all proceedings had leading up to said sales and said sales be declared null, void, and of no effect"; and this in a suit to which the tax collector is not a party.

In a large number of cases this court has held that a tax sale is equivalent to a sheriff's sale in execution, and that, where a part of the taxes for which the sale is made, although actually levied by the proper authority, is illegal, and the owner of the property allows it to be sold for taxes, he cannot, after the sale has been consummated,

set the sale aside for that reason, any more than the owner of property sold under a writ based on a judgment, where part of the debt is not due, can set aside a sheriff's sale for that reason. Jurey & Gillis v. Allison, 30 La. Ann. 1234; Shannon v. Lane, 33 La. Ann. 489; Giddens v. Mobley, 37 La. Ann. 417; Kent v. Brown & Learned, 38 La. Ann. 802 (810); State ex rel. Gaynor v. Judge, 38 La. Ann. 923; Cooley on Taxation, p. 572; Brackett v. Whidden, 3 N. H. 17.

The case of Shannon v. Lane, supra, is analogous to this one:

"Defendant was delinquent in the payment of state and parish taxes upon a plantation owned by her, for the years 1872, 1873, 1874, 1875, 1876, and 1877, and was duly entered upon the delinquent lists for said years, which were regularly recorded as required by law. In 1878 the tax collector, after advertisement and compliance with all other requirements of law, exposed the same at public sale for payment of said delinquent taxes, and, the highest bid being insufficient to pay the taxes with costs, charges, interest, and expenses, the property was bid in for the state and adjudicated to her.

"In February, 1880, plaintiff, a creditor of defendant, with mortgage on the plantation referred to, came forward and redeemed the property by paying the taxes for which the property had been sold and the subsequent taxes thereon.

"These amounted to $1,850.58, and he brings this suit to recover the same from the defendant as the owner of the property.

"Defendant admits her liability for the amount of state taxes paid for her account by plaintiff, but disputes the amount of the parish taxes on the grounds that the same were illegal, excessive, and more than the parish itself could have collected from her, and that plaintiff, as her negotiorum gestor, had no right to pay more than she owed and can collect from her no more than she did so owe.

"She relies upon the decision of this court in the case of Lafitte v. Morgans, 29 La. Ann. 1, where it was held that, under the act of 1872, the police jury of the parish had no right to levy a tax in excess of four mills on the dollar and the school tax without first obtaining the sanction of a majority of the voters at an election held for that purpose. She shows that the parish taxes, levied for the years prior to 1877, and paid by plaintiff, largely exceeded that rate, and claims that, to this extent, the payment by plaintiff did not inure to her benefit and cannot be recovered from her.

"We cast no reflection upon the decision in Lafitte v. Morgans, which we think correct, and if, as in that case, defendant was now enjoining the sale of her property by the tax collector for the enforcement of these illegal parish taxes, we should grant the relief there awarded.

"We think, however, the defendant has let go by the utile tempus within which she might have successfully urged defenses against these excessive taxes, and she cannot now set them up against this plaintiff.

"Proceedings for the assessment and collection of taxes are assimilated, in many respects, to judicial proceedings, for which they are regarded as substitutes. The assessment, the record of the delinquent lists, and the tax collector's sale are the respective equivalents of judgment, seizure, and execution sale.

"The law is careful to surround these proceedings with requirements as to notice, delays, and other formalities, intended as safeguards for the taxpayers, and to afford them ample opportunity to protect themselves against unlawful exactions. With these requirements this court has enforced the most rigorous compliance as a condition of the validity of such proceedings.

"It is not pretended that there has been in this case the slightest deficiency of perfect regularity in all the proceedings for the assessment and collection of these taxes, or that, in the whole course thereof, the defendant, though duly notified, made any objection thereto.

"These regular proceedings culminated in a sale of the property at public auction, open to all bidders. Had the property been adjudicated at a price to any third person, the law is clear that the owner could only have redeemed it by paying to the party purchasing the amount of the purchase price with interest."

Again, in the case of Kent v. Brown & Learned, supra, this court refused to countenance an attack upon a consummated tax sale, because a part of the taxes actually levied by the proper authority was illegal. It was said:

"The complaint that the tax for general parish purposes for the years 1869, 1870, 1871, and 1872 was in excess of the limit of parochial taxation is met by the defendants by the

contention that it comes too late after the sale.

"The same point was presented and discussed in the case of Shannon v. Lane [supra], in which this court said: '* * *' The point made in that case was that the complaint of excessive tax would have been good as a ground of injunction against a proposed sale, but that it could not avail as a means of assailing the sale after it had been completed.

"The contention derives strength from reason and logic as well as from law and jurisprudence.

"Proceedings for the assessment and collection of taxes are placed on the same footing as matters involving their validity as judicial proceedings. It is elementary that a judicial sale could not be set aside on the ground that the execution was for a larger amount than was actually due by the defendant. It is now settled that a writ of seizure and sale cannot be enjoined in toto, on the ground of an excessive demand; the injunction is restricted to the amount alleged to be in excess of the debt due by the defendant.

"We note that a similar complaint was favorably entertained in Rougelot's Case hereinabove referred to, but, as stated, the point of its being too late was not made by the defendant in that case, in which the issue was simply a general denial."

Under these authorities a tax sale may be annulled because of the illegality of a part of the taxes, in the absence of the objection; the reason for this being that the court will not supply a plea of estoppel which is required by law to be specifically pleaded. It was for this reason that the cases of Shannon v. Lane, supra, and Kent v. Brown & Learned, supra, were differentiated from the case of Rougelot v. Quick, 34 La. Ann. 123, and for that same reason the instant case is differentiated from the case of Rougelot v. Quick, supra, and the other Louisiana cases cited by defendant in his brief. In the cases cited by defendant it appears that on the face of the proceedings leading to the tax sale there was an apparent nullity of part of the tax claimed to be illegal that could be seen by a simple inspection of the proceedings leading up to the tax sale.

148 La.—14

The law requires as conditions precedent to a tax sale: (1) The levy of the tax; (2) the assessment of the property; (3) the notice to the tax debtor; (4) advertisement of the property; and (5) adjudication. Failure to observe any of these prerequisites to the letter is fatal to the validity of the sale, as was said in the case of Shannon v. Lane, supra, in which the objection that defendant had let go by the utile tempus was maintained.

"The law is careful to surround all these proceedings with requirements as to notice, delays, and other formalities, intended as safeguards for the taxpayers, and to afford them ample opportunity to protect themselves against unlawful exactions. With these requirements this court has enforced the most rigorous compliance as a condition of the validity of such proceedings.

"It is not pretended that there has been in this case the slightest deficiency of perfect regularity in all the proceedings for the assessment and collection of these taxes, or that, in the whole course thereof, the defendant, though duly notified, made any objection thereto."

The last paragraph sets forth the facts of this case with such accuracy that the language could not be improved upon if it had been used for the purpose of describing the facts and circumstances of this case.

It is not pretended that there has been in this case any deficiency in the regularity in the proceedings for the assessment and collection of these taxes, or that, in the courts thereof, the defendant, though duly notified, made any objection thereto. And, now, having stood by and let his property go to sale, it is too late for him to be heard to attack the sale because of the illegality of a part of the taxes for which the sale was made, for latent, nonapparent causes that possibly might have afforded him grounds for an injunction as to such alleged illegal part, if urged prior to the sale.

[3] Another objection was:

"Because defendant purchased said property from Xeter Realty, Limited, and Xeter Realty, Limited, acquired the same at a tax sale made in satisfaction of the acreage taxes levied by the Bayou Terre-aux-Bœufs drainage district and other taxes, the said acreage tax upon which plaintiff's title is based having been, prior thereto, authorized by the same authority and voted at the same election and levied by the same proceeding as was the acreage tax of the Bayou Terre-aux-Bœufs drainage district, upon which plaintiff's title is based, defendant is therefore estopped from contesting the legality or constitutionality of the said acreage taxes."

The deed by which the defendant acquired his title to the property from Xeter Realty, Limited, recites that the title of Xeter Realty, Limited, had been acquired at a sale made by the sheriff and ex officio tax collector of the parish of St. Bernard for the taxes of 1912, assessed in the name of Hopedale Development Company, per the recitals of the tax deed dated June 30, 1913, recorded in Book 24, folio 19 et seq., of the conveyance records of the parish of St. Bernard.

An examination of the two tax deeds by which Xeter Realty, Limited, the author in title of defendant, acquired the two pieces of property involved in this case, shows that the taxes for which the property was sold were identically the same taxes for which the property was sold to plaintiff, except that different years were involved. Both sales were based largely on the drainage tax, and therefore both plaintiff and defendant, so far as the titles to the property in contest are concerned, stand upon the same base.

At the time defendant purchased the property in contest the Bayou Terre-aux-Bœufs drainage district was legally organized. Three issues of bonds, based on three sets of taxes, authorized to be levied by vote of the property taxpayers in the district, aggregating more than $700,000, had been issued, and this fact had been duly promulgated, and the proceedings were of record in the parish of St. Bernard, in which the property was situated. Defendant bought the property freely and voluntarily, and with full knowledge of existing conditions by the recitals of the act of sale by which he acquired and the legal promulgation of all the proceedings in connection with the bonds. Therefore it would seem that, having bought land in the district with full knowledge of conditions that had been brought about by the owners of property within the district, he would be estopped from questioning existing conditions at the time he became purchaser of the property. If it be conceded that he has, at most, the right that his author in title—who owned the lands by virtue of the tax sale, based on the drainage taxes now claimed by the defendant to be illegal—would have had to contest the validity of the taxes upon the ground that the lands would receive no benefit from the drainage, and had been illegally assessed for said tax, we answer that his author in title could not have attacked the validity of the drainage tax, because to have done so would have been to attack his own title.

Defendant's position is analogous to that of a stockholder in a corporation who seeks to complain of ultra vires acts of the corporation prior to the time when he became a stockholder. In such case the stockholder has no right to complain of the status quo ante.

"The shareholder must be such at the time of the transaction of which he complains. One who was not a shareholder or a judgment creditor of the corporation at the time of the transfer of its business to a new corporation has no standing in equity to complain that such transfer was ultra vires, as being in violation of the prohibition against transfers in insolvency." 10 Cyc. 974.

See, also, Gordon v. Business Men's Racing Ass'n, 141 La. 819, 75 South. 735, L. R. A. 1917F, 700.

Having come to the conclusion that defendant is estopped to deny the validity of the tax sale under which he had acquired title, and that his attack on plaintiff's title has therefore failed, it becomes unnecessary to discuss the other points raised in the suit.

The judgment appealed from is affirmed.

O'NIELL, J., dissents from the foregoing opinion, without expressing an opinion regarding the issues not decided.

PROVOSTY, J., dissents.

DAWKINS, J., concurs in the decree.

### On Rehearing.

O'NIELL, J. This suit is brought, under the provisions of Act 101 of 1898, p. 127, to confirm a tax sale made to plaintiff on the 26th of June, 1915, for taxes assessed in the name of the Xeter Realty Company for the year 1914. The statute provides that a tax sale may be thus confirmed by judicial decree, unless a proceeding to annul the sale be instituted within six months from the date of service of the petition and citation. It is well settled by the decisions of this court that the action to annul the tax sale may be brought by the defendant in such suit within the six months, either by way of answer to the suit or by a separate action. In either case the defendant in the action to confirm the tax title becomes plaintiff in the action of nullity.

In answer to this suit to confirm the tax sale, defendant pleaded that the sale was null, for various reasons set forth in his answer, and prayed that it be so decreed. Of the several causes of nullity alleged by defendant, he has abandoned all except the contention that a certain drainage tax levied by the board of commissioners of the Bayou Terre-aux-Bœufs drainage district, for which tax, with other taxes, the land was sold, was invalid. The cause of invalidity alleged is twofold, viz.: (1) That the drainage tax referred to was imposed for gravity drainage, under authority of a vote of the property taxpayers at a special election called for that purpose, whereas, defendant alleged, the land in contest was marsh or swamp land, which could be drained only by means of levees and pumps, not by means of canals alone, and which could therefore be taxed for drainage purposes only upon a petition of the owners of the major part in area of the land within the drainage district, and could not be taxed for a system of gravity drainage, under authority of an election held for that purpose; (2) that the land in contest was not improved or benefited by the system of gravity drainage for the cost of which the tax was imposed, and that the sale of the property in payment of such tax was therefore illegal, unjust, unwarranted, contrary to law, and was virtually a confiscation of the property, or taking of it without due process of law, and without compensation, in violation of the fourteenth article of amendment of the federal Constitution and of the second article of the Constitution of this state.

On the trial of the case, plaintiff in the original suit, defendant in the action of nullity, urged the following objections to all evidence offered by defendant to prove that the land was not improved or benefited by the gravity drainage, and was therefore not subject to a tax levied for that system of drainage, viz.:

(1) That, by suffering the sale to be made without objection, defendant had allowed to expire the utile tempus, within which he might have urged the defense, and that he could not thereafter urge as a cause for annulling the tax sale a collateral attack upon the validity of that part of the taxes for which the property was sold.

(2) That defendant had bought the property from the Xeter Realty Company, and that that company had bought the property at a sale

made for the same drainage tax in contest in this suit, though levied for a previous year, and that defendant therefore could not, for that cause, assert the nullity of plaintiff's title in this suit without thereby asserting the nullity of his own title.

(3) That defendant did not, in his answer to the suit, allege that there was fraud or a palpable abuse of discretion in the organization of the drainage district or in the levying of the tax complained of, and that the judicial department of the government was therefore without authority or jurisdiction to determine whether the land in contest was or was not improved or benefited by the levy of the drainage tax or forced contribution for the general improvement of all property within the district.

The district judge reserved his ruling upon the objections to the admissibility of the evidence, maintaining that the objections pertained to the effect of the evidence; and the court therefore admitted the evidence, subject to defendant's objections. After trial of the case judgment was rendered in favor of plaintiff confirming his tax title, and defendant has appealed.

Opinion.

[4] Our opinion is that the objections to the admissibility of the evidence should have been sustained. The answer to this suit does not charge that there was fraud, or such an abuse of discretion as was equivalent to fraud, on the part of the commissioners of the drainage district in imposing the tax or local assessment for gravity drainage upon the land in contest. The determination of the question whether any particular tract of land is improved or benefited by being included within a taxing district, or the determination of the question of the extent of improvement or benefit of any particular tract of land within such district, is, primarily, a function for the governing authorities of the district to exercise; and, when they have exercised that function, their decision is not subject to review by the courts,

except upon allegations of fraud or of such an abuse of discretion as would be equivalent to fraud. George v. Young, Tax Collector, 45 La. Ann. 1232, 14 South. 137; De Gravelle v. Iberia & St. Mary Drainage District, 104 La. 703, 29 South. 302; Shaw v. Board of Commissioners of Bayou Terre-aux-Bœufs Drainage District, 138 La. 917, 70 South. 910; Saunders v. Shaw, 244 U. S. 317, 37 Sup. Ct. 638, 61 L. Ed. 1163; Williams v. Board of Commissioners of Bayou Sale Drainage District, 130 La. 969, 58 South. 847; Myles Salt Co. v. Board of Commissioners of Iberia & St. Mary Drainage District, 134 La. 903, 64 South. 825, and 239 U. S. 478, 36 Sup. Ct. 204, 60 L. Ed. 392, L. R. A. 1918E, 190; Spencer v. Merchant, 125 U. S. 355, 8 Sup. Ct. 921, 31 L. Ed. 763; New Orleans v. Clark, 95 U. S. 653, 24 L. Ed. 521; Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443; L. & N. Railroad Co. v. Barber Asphalt Paving Co., 197 U. S. 430, 25 Sup. Ct. 466, 49 L. Ed. 819; French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; Chadwick v. Kelly, 187 U. S. 540, 23 Sup. Ct. 175, 47 L. Ed. 293.

[5] It is not alleged in defendant's answer to this suit that the action of the board of commissioners in subjecting the land in contest to a tax levied for gravity drainage was an arbitrary discrimination, or such an unjust imposition or abuse of discretion as would be equivalent to fraud. The allegation that the sale of defendant's property for the drainage tax in contest was a confiscation or a taking of the property without due process of law and without compensation was nothing more than an allegation that the property was not improved or benefited by the general improvement for which the tax was levied. Such an allegation does not warrant an investigation by the courts into the question of improvement or benefit of

any particular property in the taxing district by the general improvement for which the tax was imposed.

[6] It is true article 281 of the Constitution of 1898, as amended pursuant to Act 197 of 1910, p. 332, and pursuant to Act 192 of 1914, p. 370, provides one method for imposing a tax for gravity drainage upon land that can be drained by means of canals alone, and another method for imposing a tax for draining land that is not susceptible of gravity drainage, and that can only be drained by means of levees and pumps. The tax for gravity drainage can be imposed only under authority of a vote of a majority in number and amount of the property tax payers of the drainage district. The tax for draining land that is not susceptible of gravity drainage, and that has to be levied and pumped in order to be drained and reclaimed, can be imposed only upon a petition of the owners of a majority in area of the land within the drainage district. The Constitution, as amended, also provides that drainage districts may be divided into subdistricts, for the purpose of having a suitable system of drainage for each subdistrict. But that does not mean that each and every landowner in the district is entitled to have a separate subdistrict and a system of drainage particularly suited to his land. It may be true, and we presume it is true, that the canals which effectively and completely drain those lands that are high enough for gravity drainage are also necessary, though not of themselves sufficient, for the drainage of the lower lands which need also the aid of levees and pumps to drain them effectively and reclaim them. Therefore a determination of the question whether a proposed canal will eventually improve or benefit any particular tract of land in a drainage district is largely a matter of prophecy on the part of the governing authorities of the district,

aided by the advice of expert engineers. When the determination or prophecy as to the general improvement of the land included in the taxing district has been faithfully and conscientiously made by the authorities intrusted with that function, the burden of the tax must be borne by all land within the district, in the ratio fixed by law; and it is not within the authority or jurisdiction of any court to annul the tax as to any particular piece of land merely because, in the judgment of the court, that particular piece of land was not improved or benefited to the extent anticipated by the governing authorities of the taxing district.

[7] Defendant's attack upon the validity of the drainage tax in contest is nothing more than a collateral attack upon the validity of the bonds into which this tax has been funded. Our opinion is that the tax and the bonds into which the tax was funded are not subject to a collateral attack in a proceeding to which the authorities who levied the tax and the holders of the bonds are not parties defendant.

[8] On reconsideration of the question, we are also of the opinion that the defendant in this suit is not in a position to attack the validity of the drainage tax for a cause which, if well founded, would destroy his own title to the land in contest. The record discloses that the Xeter Realty Company, from whom defendant bought the land, acquired title by virtue of two sales made by the tax collector for delinquent taxes, a part of which was the drainage tax now in contest. It is true the taxes for which the land was sold to the Xeter Realty Company were assessed for years previous to the year for which the drainage tax is now contested. But that circumstance does not affect the case, because the cause of nullity alleged by defendant in this suit would, if well found-

ed, annul the tax for each and every year for which it was assessed.

Our conclusion is that the judgment appealed from is correct and should be affirmed.

The judgment is affirmed at appellant's cost.