(95 South. 794)

Nos. 24604, 25029.

**J. H. HINES CO., Inc., v. GUILLOT, Sheriff**
(two cases).

(March 13, 1922. On Rehearing, Feb. 26, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Levees and flood control** ☜22—**Power of taxation held conferred upon board of commissioners so far as Legislature had power.**

Act No. 80 of 1906 confers upon the commissioners of the levee and drainage district thereby created the power to levy ad valorem and acreage taxes, in so far as it was possible for the Legislature to give such power, and the courts cannot interfere except for violation of the state or federal Constitution.

2. **Levees and flood control** ☜9—**Court cannot control discretion of board of commissioners or engineers while acting within powers delegated.**

The court cannot control discretion of board of commissioners of levee and drainage district and its engineers as to whether levees or canals should be built or as to their location, so long as they act within the powers delegated and not in violation of constitutional provisions.

3. **Levees and flood control** ☜23—**That plaintiff's land not immediately benefited does not prevent taxation, when general scheme when completed will benefit it.**

Where levee constructed by levee and drainage district, under Act No. 80 of 1906, is part of a general scheme of the state board of engineers for draining a large scope of lands, which, when perfected and in operation, will benefit plaintiff's land plaintiff cannot prevent taxation of its land by the district because it has not derived any immediate or direct benefit from the work already completed.

4. **Levees and flood control** ☜1—**Legislature and its creatures have wide discretion, which will not be disturbed except for clear abuse.**

In the construction of levees indirectly benefiting the whole people of the state, the Legislature and its creatures have a wide discretion, which will not be disturbed by the courts except in clear cases of abuse of power.

5. **Levees and flood control** ☜27—**One who purchased when taxes were being levied cannot attack taxes.**

One who purchased land when taxes were already being levied by a levee and drainage district cannot resist payment of the tax.

6. **Levees and flood control** ☜25—**Tax levied four days after promulgation of act authorizing the tax held premature.**

Under Act No. 202 of 1918 promulgated August 3, 1918, and increasing the acreage tax authorized to be levied by certain levee and drainage district, a tax for the increased amount levied on August 7th, was premature and unauthorized.

7. **Levees and flood control** ☜8—**Members of board of commissioners of levee and drainage district need not reside within the district.**

Act No. 80 of 1906, creating a levee and drainage district, does not require all members of the board of commissioners to reside within the district.

8. **Levees and flood control** ☜27—**Attorney's fees not recoverable as to part of judgment enjoining levy.**

Where an acreage tax levied by a levee and drainage district was unauthorized to the extent of three-fifths thereof, and was therefore wholly enjoined, attorney's fees are not recoverable by the tax collector upon that portion of the judgment under Act No. 170 of 1898, § 56.

On Rehearing.

9. **Appeal and error** ☜878(6)—**Part of judgment not appealed from not amended by allowing attorney's fees.**

Where defendants alone appealed from judgment dissolving injunction against collection of ad valorem tax, but maintaining it as to an acreage tax, and limited their appeal to the part of the judgment perpetuating the injunction as to the acreage tax, it was error to amend the judgment to allow attorney's fees on the ad valorem tax.

10. **Appeal and error** ☜878(6) — **Judgment held final as against party not asking rehearing.**

Where, in suit to enjoin collection of taxes, no attorneys' fees were allowed by the Supreme Court on a certain tax and the sheriff and tax collector did not ask for a rehearing, the decree denying such attorney's fees must be considered final.

**11. Levees and flood control ⬷⬵27—Contest of case in Supreme Court by tax collector held to justify allowance of attorney's fees.**

In suit to enjoin collection of taxes levied by levee and drainage district, though tax collector filed no answer in the court below, where he filed answer to the appeal and joined the levee district in filing briefs and arguing the case, there was a sufficient basis for the allowance of attorney's fees under Act No. 170 of 1898, § 56.

**12. Levees and flood control ⬷⬵27—Supreme Court may allow attorney's fees as incident of appeal for defense of suit in that court.**

Under Act No. 170 of 1898, § 56, attorney's fees may be allowed by the Supreme Court, as an incident of an appeal, for defending, in that court, a suit to enjoin collection of taxes in which the tax collector filed no answer below.

**13. Appeal and error ⬷⬵878(6)—Appellee who did not answer held entitled to answer appeal and ask that judgment be amended.**

In suit to enjoin collection of taxes, though tax collector filed no answer in the lower court, where he was a party and became an appellee when plaintiff obtained an order granting an appeal, he had a right to answer the appeal and to ask that the judgment be amended to allow attorney's fees.

**14. Levees and flood control ⬷⬵27—Tax collector authorized to collect attorney's fees in suit to enjoin collection of assessment.**

Under Act No. 80 of 1906, authorizing levee and drainage district to levy ad valorem tax to be collected in the same manner as state taxes, and Act No. 202 of 1918, authorizing local assessment upon acreage to be collected in the same manner as the ad valorem tax, the tax collector under Act 170 of 1898, § 56, is authorized to employ counsel to defend suit to enjoin collection of such acreage assessment and, in collecting the tax found due, to collect an attorney's fee of 10 per cent.

Appeal from Fourteenth Judicial District Court, Parish of Avoyelles; S. Allen Bordelon, Judge.

Two actions by the J. H. Hines Company, Incorporated, against Amet Guillot, Sheriff and ex officio Tax Collector, and others. From the judgment in the first action, defendants appeal, and, from the judgment in the second action, plaintiff appeals. Amended and affirmed.

Dale, Young & Dale, of Vidalia, and E. L. Lafargue and W. E. Couvillon, both of Marksville, for plaintiff.

G. L. Porterie, of Marksville, and Wilkinson, Lewis & Wilkinson and W. B. Hamilton, all of Shreveport, for defendant Saline Levee & Drainage Dist.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

DAWKINS, J. In these two cases, the plaintiff seeks to enjoin the collection of certain ad valorem and acreage taxes, levied by the board of commissioners of the Saline levee and drainage district. Petitioner alleges that it is the owner of 22,957.55 out of a total of 38,278 acres embraced in the whole district; that $100,000 of bonds have already been issued by said district and the proceeds expended without any benefit accruing to petitioner's property; that the board has no funds; that it has no work in contemplation; that the said taxes are confiscatory, will benefit only a few who have property near the front on Red river, and will in no sense be used for the benefit of the great majority of said lands.

In the first of said causes, No. 24604, the action of said board is attacked upon an additional ground, to wit: That Act No. 202 of 1918, purporting to authorize an acreage tax of 25 cents per acre, had not gone into effect at the time said board made the levy having been promulgated on August 3d, and the Board having acted on August 7th following, or 17 days before the law became effective. The other suit was brought to restrain the collection of the taxes for the year 1919, and hence does not involve this latter question.

The lower court sustained the ad valorem tax in both cases, but declared the acreage tax invalid, defendant has appealed, and plaintiff has answered, praying that the ad valorem tax be also annulled.

153 LA.—11

Opinion.

By Act No. 80 of 1906, the Legislature created the Saline levee and drainage district, provided for the appointment of a board of commissioners, and in the title, declared the further purposes of said act to be:

"To authorize the said board to levy, assess and collect a tax or local assessment, or forced contribution; authorizing the levy * * * of an ad valorem tax on all the property within the district; the levying and collection of a specific tax or assessment on each bale of cotton raised in the said district; authorizing the assessment and collection of a tax upon each mile of railroad within the said district; authorizing the said board to provide for the fixing of rules and laws for the government of the levee and drainage district; authorizing the issuing of bonds; pledging the revenues of the said district to the payment of said bonds, interest and other monies, to be borrowed in pursuance of the provisions of this act; authorizing and requiring the levying of taxes for the payment of the interest and principal of the same; providing for a sinking fund for the redemption of the bonds; authorizing and empowering the board to borrow money, for the use of the board, and authorizing the mortgage or pledge of the property and things of value, including the revenues for the payment of the amount so borrowed; donating to the levee and drainage district certain lands in the district belonging to the state, and prescribing the duties of the state board of engineers in connection therewith."

In section 4 of the act, after prescribing the general powers of the board, it is further provided:

"The said board shall have authority to buy and hold, or to sell and transfer title to property; to make and execute contracts, and to do and perform any and all acts necessary to carry out the object of this act, namely, the thorough and perfect protection of the lands of this district from damage by flood, and for the perfect drainage of the same."

And, in section 5, it is required that:

"They shall devise and adopt rules and regulations for the carrying into effect and perfecting of a comprehensive levee and drainage system, having for its object the protection of the entire district from overflow, from river water or rain water."

By section 6, they were authorized to levy an ad valorem tax of 10 mills, and in section 7, an acreage tax "not to exceed 5 cents per acre." Subsequent provisions regulate the issuing of bonds, and the method of their payment.

Section 13, among other things, declares:

"That the issue of the said bonds is hereby declared to create a valid contract between said board of commissioners, and the state and each and every holder of said bonds, which neither the said board of commissioners nor the state shall impair. The said bonds shall be a valid obligation of said board in favor of any holder and no court shall enjoin the payment of the principal or interest thereof, or the levy and the collection of the taxes therefor and the judicial power shall be exercised by any court of competent jurisdiction within the state of Louisiana, when necessary to secure said levy, collection and payment."

Section 18 requires that a member of the state board of engineers shall attend each meeting of said board, when notified to do so, to report and advise the board—

"as to the location, construction and repairs of all levees and drainage canals necessary for the protection of the district, and they [the board of engineers] are hereby authorized to survey and locate and repair and remove or change any and all levees and drainage canals in the district, and are especially authorized to cause to be closed by levees, dykes or otherwise, such outlets, bayous or sloughs or to open the same, as in their judgment may be necessary to carry out the objects of this act, and are solely charged with the responsibility of the location of all levees and drainage canals in said district. They shall furnish to the board a detailed report showing the proper location of the levee lines and drainage canals, and shall furnish plans and specifications, and shall perform all engineering work required by the board of this district."

We have thus quoted and referred to the provisions of the act at length, to show its comprehensive nature, and to demonstrate the features which appear to eliminate the possibilities of local favoritism and discrimination in carrying out its purposes. It will be seen from the section last quoted, that the

character, location and extent of levee and canal construction, is left to the judgment of the state board of engineers, thereby largely removing the possibility of local influence that might induce the performing of work to the advantage of one portion of the district and to the prejudice of another.

[1, 2] The power of taxation of the character herein complained of was unquestionably conferred upon the board, in so far as it was possible for the Legislature to give it; and the courts are not authorized to interfere, unless there has been a violation of some provisions of the state or federal Constitutions. Certainly we could not interfere to control the discretion of the board and its engineers, as to whether levees or canals were built, or as to their location, so long as they were acting within the powers delegated, and not in violation of the letter or spirit of constitutional provisions.

[3] The theory of the plaintiff is that its property is being taxed to protect and drain the lands of other persons, without the possibility of benefit to its own; and, in support of this position, it has shown that most of the lands are located more remotely from the levee and banks of Red river than those of other persons in the district, and that the work so far done with the proceeds of the first bond issue consists of a levee beginning at the southwest end of the district, and extending down the river in front thereof. All of the district is north and west of Red river, and the effect of this levee (which forms a link in a chain extending more or less imperfectly in a general northwesterly direction through the state) is to prevent the overflow of the waters of that river at flood stage upon the lands in the district, including those of plaintiff, and by which, to this extent, at least, they are benefited, although the system contemplated has not yet been developed so as to render all of the property or a large portion of it susceptible to cultiva-tion. It is shown that this levee and the work contemplated by this district is a part of a general scheme conceived by the state board of engineers for building levees and draining a large scope of lands within the territory lying between the Red and Mississippi rivers, which, if ever perfected, will benefit all of the lands, more or less, within that basin. It is true that, if this district always stood alone, and no effort were made to control the waters from the Ouachita and Black rivers and their tributaries, as expressed by one witness, the district would have to be levied all around, except on the west, and then pumped to keep it from being a lake; but this will not be the case, as stated by one of the state engineers, when the general plan is perfected and in operation.

There is no charge of fraud in either petition, and none has been proven, plaintiff pitching its claim to relief upon the want of benefits solely (except as to the issue of prematurity in the first case). In this respect, the present cases are clearly distinguishable from that of Myles Salt Co. v. Iberia Drainage District, 239 U. S. 478, 36 Sup. Ct. 204, 60 L. Ed. 392, L. R. A. 1918E, 190. The latter case was one which went to the Supreme Court of the United States on writ of error from this court, and in which the judgment of this court, affirming that of the trial court sustaining an exception of no cause of action, was reversed, upon the ground that the petition charged fraud and the arbitrary abuse of the taxing power, in that a very valuable salt mine or dome, rising nearly two hundred feet above the surrounding lands, had been included in a drainage district, solely for the purpose of augmenting the assessment for the collection of taxes, in order to drain other private property, when there was not a possibility of the salt mine deriving any benefit therefrom. And, even in that case, that high tribunal said:

"There is no doubt that the Legislature of a state may constitute drainage districts and define their boundaries or may delegate such authority to local administrative bodies, as, in the present case, to the police juries of the parishes of the state, and that their action cannot be assailed under the Fourteenth Amendment, unless it is palpably arbitrary and a plain abuse."

It was found in that case, according to the allegations of the petition, that the action of the defendant was "palpably arbitrary and a plain abuse." No such case is alleged or proven here; but, on the contrary, every possible precaution to prevent arbitrariness and abuse has been provided by the Legislature, and it is shown that the lands of plaintiff have been and will be benefited more as the work progresses in connection with that of other undertakings of like nature in the state. Some eighteen boards of this character have been created in the state, for the purpose of reclaiming alluvial lands like those within the Saline levee and drainage district, and if all the property to be taxed had to derive immediate and direct benefit, it would never be possible to begin or complete the work. These levees benefit indirectly the whole people of the state, in that they render susceptible of cultivation many millions of acres of land which would otherwise go to waste, thereby adding to the wealth of the state, and providing a source of revenue through general taxation for schools and other purposes, the benefits of which are enjoyed by all of its citizens. Again, they aid in protecting the public roads and highways of commerce for the use of the general public, of which, presumably, the taxpayers in every district form a part.

[4] In such matters, the Legislature and its creatures have a wide discretion, which will not be disturbed by the courts, except in clear cases of abuse of power. George v. Young, Sheriff, 45 La. Ann. 1232, 14 South. 137; Myles Salt Co. v. Iberia Drainage Dist., 239 U. S. 478, 36 Sup. Ct. 204, 60 L. Ed. 392, L. R. A. 1918E, 190; De Gravelle v. Iberia & St. Mary Drainage Dist., 104 La. 703, 29 South. 302. See, also, Duffy v. Peneguy, 148 La. 407, 87 South. 25, and authorities therein cited.

[5, 6] The Act 206 of 1912 increased the acreage tax to 10 cents, and the Act No. 202 of 1918 again increased it to 25 cents per acre. So that when plaintiff bought its property on April 1, 1918, the ad valorem tax and the acreage tax of 10 cents per acre were already being levied; and, under the ruling in Duffy v. Peneguy, supra, plaintiff is to that extent precluded from resisting them. But, in so far as the increase from 10 to 25 cents per acre for the year 1918 is concerned, the board acted prematurely, for the reason that Act No. 202 of that year was not promulgated until August 3d, and the tax was levied on August 7th, 17 days before it had the power to do so with respect to the increase.

[7] We find nothing in the law to sustain the contention that all members of the board had to reside within the district, even if it were permissible to attack their capacity in this collateral way.

[8] As to the fees of the attorney for representing the tax collector, section 56 of Act No. 170 of 1898 imposes upon the tax debtor a penalty of 10 per cent. on the amount collected for such fees, and requires the tax collector to collect the same as costs when collecting the judgment. For this reason, we think it was not necessary that there should have been a specific prayer for attorney's fees, and that the demand for costs was sufficient. However, as to the acreage tax for the year 1918, plaintiff's demand has been sustained to the extent of three-fifths thereof, and, since it was compelled to enjoin the whole levy for that purpose, we do not think that attorney's fees are due upon that portion of the judgment.

For the reasons assigned, the judgments

appealed from are amended so as to dissolve the writs of injunction and to dismiss the plaintiff's demands, save and except to the extent that the acreage tax for 1918 exceeds 10 cents per acre, as to which excess the injunction is perpetuated and the levy annulled. It is further ordered that the plaintiff pay the costs of appeal, as well as the costs of the lower court in case No. 25029, and that defendant pay the costs of the lower court in case No. 24604; and that the tax collector collect as costs 10 per cent. of the amount of taxes and penalties, as attorney's fees upon the amount of the ad valorem tax for the year 1918, and upon the whole of the taxes for the year 1919, and, as thus amended, the judgment of the lower court is affirmed.

ST. PAUL, J. (concurring). I concur in the decree, and also in the opinion; but I do not admit that, under any circumstances, the judicial branch of a government may even entertain a question as to the bona fides of one of the other co-ordinate branches of that government, or review the propriety of any act lying admittedly within the discretion of another department of the government. See Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed. 162, and the long list of citations on page 395 of the first volume of Rose's notes to U. S. Reports. And this applies even to subordinate legislative bodies. Villavasso v. Barthet, 39 La. Ann. 247, 258, 1 South. 599.

## On Rehearing.

OVERTON, J. In these cases, a rehearing was granted, confined to the question of attorney's fees. On the first hearing it was held that the sheriff and ex officio tax collector should collect as costs 10 per cent. attorney's fees, in collecting the taxes held to be due by plaintiff on the property involved in these suits, with the exception of these fees on the acreage tax for the year 1918. With respect to that tax, it was held that attorney's fees, based on it, were not collectible, for the reason that it was null to the extent of three-fifths, and for the further reason that plaintiff was compelled to enjoin its levy for that year.

[9] Plaintiff contends that we erred in our original opinion in allowing even a part of these fees, and assigns several reasons therefor. It is first pointed out that in appeal No. 24604, judgment was rendered against plaintiff in the lower court dissolving the writ of injunction as to the attempted collection of the ad valorem tax, but maintaining the writ as to the collection of the acreage tax; that plaintiff did not appeal from this judgment, but that defendants alone appealed from it; that, in appealing, defendants purposely limited their appeal to the judgment perpetuating the injunction as to the collection of the acreage tax, thus excluding from the appeal, not only the ad valorem tax itself, but the right to attorney's fees based on that tax. As the appeal was thus limited, we inadvertently erred in allowing attorney's fees on the ad valorem tax for the year 1918.

[10] The question with reference to the allowance of attorney's fees on the ad valorem tax in appeal No. 24604 having been considered, there still remains for determination, as part of the same appeal, the question as to whether our judgment rejecting attorney's fees on that part of the acreage tax, decreed valid by us, should be disturbed. The acreage tax for that year was reduced, by the judgment handed down by us, from 25 cents to 10 cents an acre. Because of that reduction, no attorney's fees were allowed on the acreage tax for the year 1918, involved in appeal No. 24604. The judgment, to that extent, was against the sheriff and tax collector. As he did not ask for a rehearing, and as none was granted him, the decree rendered, rejecting the attorney's fees on that tax, should be considered final.

The next question to be considered is the allowance of attorney's fees on the acreage and ad valorem taxes for the year 1919, involved in appeal No. 25029. The decree rendered by us in that case recognizes the validity of both taxes, as levied, and allows the 10 per centum attorney's fees on each. Plaintiff urges that the attorney's fees should not be allowed \upon either the acreage or the ad valorem taxes, for the reason that neither suit was contested by the tax collector; that, while that official was cited to answer plaintiff's demand, and was enjoined from selling plaintiff's property to collect the taxes, yet that he made no appearance, and hence did not incur the expense attendant upon employing an attorney to defend the suit.

The record discloses that the tax collector and the levee district were cited to answer plaintiff's demand; that both were enjoined from attempting to collect the ad valorem and the acreage taxes levied against plaintiff's property for the year 1919; that the levee district, represented by G. L. Porterie, district attorney of the Fourteenth judicial district, filed an answer to the suit; that the tax collector filed no motion, exception, or answer in the lower court, and that no default was entered against him; that the trial of the case was had, when Wade Norman, the successor of Mr. Porterie, held the office of district attorney; that, on the trial of the suit, as appears from the stenographic notes, Mr. Norman, the district attorney, Mr. Porterie, and several other attorneys appeared for defendant, which indicates that the tax collector was represented in the examination of witnesses; that an effort was made, after the trial judge had rendered judgment orally, to include the attorney's fees in the written judgment presented for signature; that this effort proved unsuccessful; that the plaintiff alone appealed from the judgment rendered; that the sheriff and tax collector, through his attorney, Mr. Porterie, filed an answer to the appeal, praying for a slight amendment to the judgment, and also asking that the judgment be amended by allowing him 10 per centum attorney's fees, and in other respects that the judgment be affirmed. In this court briefs were filed by the defendants. Each brief is signed by Mr. Porterie, as well as by the remaining attorneys connected with the defense, as attorneys for defendants, thus showing that both defendants joined forces in the contest in this court. Mr. Porterie, who signed the answer to the appeal as attorney for the tax collector, also took part in the argument of the case in this court.

[11, 12] From the above, it would seem that, while the tax collector filed no answer to the suit in the court below, and no default was entered against him, yet that he was represented, without objection, in the examination of witnesses, and apparently joined forces with the levee district, in the lower court, in the suit under consideration. Under the circumstances, he might be considered and treated as having adopted the answer of the levee district. However, as this does not appear as clearly as it might, we may disregard his apparent contest in the lower court, and consider his right to collect the fees, with which to pay his attorney, from the standpoint of his appearance in this court. Here, unmistakably, through his counsel, Mr. Porterie, he filed an answer to the appeal, joined the levee district in filing briefs, and argued the case.

The services just mentioned, as rendered by Porterie, in this court, in behalf of the tax collector, are sufficient to entitle him to the compensation allowed by law; and, such being the case, it remains, as one of the questions to be determined, whether this court, sitting as an appellate court, may allow, as an incident of the appeal, attorney's fees for services wholly rendered here. Section 56 of Act 170 of 1898 authorizes the tax collector, whenever he is enjoined from collecting a property tax, to employ an at-

torney to represent him in defending the suit, and, in order to compensate the attorney, authorizes that official to collect from the unsuccessful tax debtor, as costs, 10 per centum attorney's fees, in collecting the taxes and other penalties. It, therefore, appears that, while the statute speaks of the attorney's fees as a penalty, yet in reality it treats them as costs, and expressly terms them such. Being costs incurred in defending the suit, they may be allowed by us as an incident of the appeal for defending the suit wholly in this court.

[13] Plaintiff also contends that, as no issue was joined with or by the tax collector in the lower court, this official was not legally a party to the suit or to the appeal, and, hence, that the judgment cannot be amended in his favor so as to allow the attorney's fees.

In answer to this contention, it is sufficient to say that the tax collector was made a party to the suit, in the lower court, by the prayer of plaintiff's petition, and by the citation which issued to him in accordance with that prayer; and that, having been made a party to the suit, in the lower court, he became an appellee, when plaintiff, in open court, obtained an order granting it an appeal from the judgment rendered. As an appellee he had the right to answer the appeal, and to ask that the judgment be amended so as to allow attorney's fees.

[14] Plaintiff also urges an additional reason why attorney's fees should not be allowed on the acreage tax for the year 1919. The reason thus urged is that this tax is nothing more than a local assessment, and that the law does not sanction the collection of such fees from the tax debtor by the tax collector, with which to pay counsel for successfully defending a suit enjoining him from collecting such a tax. We think, however, that plaintiff is in error. The levee district, in this instance, was created by Act No. 80 of 1906. The sixth section of this act authorizes the district to levy a 10-mill tax on the assessed valuation of all taxable property within its borders, and makes it the duty of the tax collector of the parish to collect this tax in the same manner as state taxes are collected, and to settle therefor with the auditor and treasurer of the state. Act 202 of 1918 authorizes the board of commissioners of the district to levy a local assessment, or forced contribution, not exceeding 25 cents an acre, on land within the district, and not exceeding $60 a mile on any railroad therein, and provides that these assessments shall be collected in the same manner as that provided for the collection of the 10-mill tax above mentioned, which, as we have seen, is the same as that provided for state taxes.

The Legislature, in the act last cited, does not expressly provide that the parish tax collector shall collect these assessments, but it imposes this duty on him by necessary implication, when it provides that they shall be collected in the same manner as state taxes, since the latter may be collected legally only by him or his authorized deputy. In discharging the duty of collecting these assessments, is he to discontinue his efforts to collect, merely because he is met with a writ of injunction? We think not. Under such circumstances, it becomes his duty to defend the suit, so as to maintain such right as he may have to collect the assessments, just as it would be, if he were enjoined from collecting a state tax. In no other way could he fully discharge his duty. In discharging it, under these circumstances, we think that Act 202 of 1918 fairly contemplates that he should proceed in the same manner as he is authorized to do by section 56 of Act 170 of 1898, when enjoined from collecting a state tax; that is to say, employ counsel to represent him, and in collecting the tax found due, if any, to collect 10 per centum attorney's fees thereon with which to pay the attorney employed. By express provision, in section 56 of Act 170 of 1898, the tax debtor is made liable for these fees, when

a state tax, or part thereof, is unsuccessfully enjoined by him, and by fair implication, we think, he is also liable when the collection of a local assessment, levied under the Act of 1918, is unsuccessfully enjoined. Nowhere does the law even suggest that these fees shall be deducted from the assessment collected or suggest any other provision for their payment. Hence, we think that our former decree allowing them on the acreage tax for the year 1919, to be collected from the tax debtor, in collecting the taxes found due, is correct.

Plaintiff, among other cases, has cited Miramon v. City of New Orleans, 52 La. Ann. 1623, 28 South. 107, and Vicksburg, Shreveport & Pacific R. R. v. Traylor, Sheriff, 104 La. 284, 29 South. 141, as supporting its contention that it is not liable for attorney's fees on the acreage tax. We have carefully considered these cases, including those not specifically mentioned by us, but fail to find any conflict between them and the views herein expressed.

For the reasons assigned, it is ordered, adjudged, and decreed that our former decree, rendered herein, be amended so as to disallow the 10 per centum attorney's fees on said ad valorem tax for the year 1918; and in all other respects, in so far as set aside, that said decree be reinstated and made the final judgment of this court.