80 So.2d 81 (1955)
227 La. 575
Vincent DANTONI
v.
The BOARD OF LEVEE COMMISSIONERS OF the ORLEANS LEVEE DISTRICT.
No. 42249.
Supreme Court of Louisiana.
March 21, 1955.
Rehearing Denied April 25, 1955.
James David McNeill, New Orleans, for defendant-appellant.
Clem H. Sehrt, New Orleans, Preston H. Hufft, Baton Rouge, Miazza & Drury, Kalford K. Miazza, New Orleans, for intervenor-appellant.
*82 Deutsch, Kerrigan & Stiles, R. Emmett Kerrigan, Ralph L. Kaskell, Jr., Gerald J. Gallinghouse, New Orleans, for intervenors-appellees.
Lucien J. Fourcade, New Orleans, for plaintiff-appellee.
PONDER, Justice.
The plaintiff, Vincent Dantoni, a property owner and taxpayer, brought suit against the Board of Levee Commissioners of the Orleans Levee District seeking to enjoin the defendant board from levying or attempting to levy any tax in excess of 3½ mills for the years beginning 1955 through 1959 and from levying or attempting to levy a tax in excess of 2 mills thereafter and to annul a resolution, adopted by the defendant board, to levy a tax of 5½ mills on all taxable property in the Parish of Orleans for 1955. Defendant answered admitting that the resolution was adopted and averred that under the provisions of the Constitution, and the legislation enacted thereunder, that it was authorized to levy the 5½ mill tax, ½ mill for the payment of reparation claims arising out of the break of the levee at Caernarvon, and 5 mills for the carrying out of its duty to construct, maintain, and repair levees and to retire its bonded indebtedness. Louis J. Roussel, owner of various bonds issued by the board, intervened and alleged that the defendant board had $8,280,000 worth of outstanding bonds; that under the constitutional provisions in effect at the time the bonds were issued the defendant board was authorized to levy a tax of 5 mills on the dollar for the purpose of constructing and maintaining levees, levee drainage and for all other purposes incidental thereto and to retire the bonds issued for that purpose; and that the constitutional amendment adopted pursuant to Act 756 of 1954 is unconstitutional because it impairs the contract of the bondholders. A petition of intervention was filed by several citizens and taxpayers who joined with the plaintiff and prayed for an injunction against the defendant board. After a hearing of the case, the lower court gave judgment annulling the resolution of the defendant board and enjoined the board from levying or attempting to levy any tax in excess of 3½ mills for the years 1955 through 1959 and from levying or attempting to levy any tax in excess of 2 mills thereafter. The defendant board and the intervenor Roussel have appealed.
This litigation raises two questions. The first question posed is whether or not Act 756 of 1954, adopted as a constitutional amendment to Section 2 of Article 16 of the LSA-Constitution of 1921, impairs the obligation of the contract with the bondholders. The plaintiff and intervening taxpayers contend that the taxing power of the Levee Board is limited to 3½ mills by the amendment. All parties concede that the Levee Board had authority to levy ½ mill of the tax for the payment of the reparation claims arising out of the break of the levee at Caernarvon. The intervening bondholder contends the amendment to the Constitution impairs the obligation of the contract with the bondholders. The Levee Board contends that the constitutional amendment merely restricts their taxing power as to levee work and does not restrict it insofar as the bondholders are concerned.
It appears from the evidence that there are $501,000 worth of bonds outstanding and unpaid issued in the year 1909. These bonds were issued prior to the adoption of the Constitution of 1921 and it is contended that under a prior act they were secured by only 1 mill tax. It is not necessary to determine this question for the purpose of the decision in this case because there are outstanding bonds in the amount of $7,214,000 issued under the provisions of Section 2 of Article 16 of the Constitution of 1921, prior to the 1954 amendment.
Under the provisions of Section 2 of Article 16 of the Constitution of 1921, prior to the adoption of the amendment of 1954, the Levee Board was authorized to levy annually a tax not to exceed 5 mills for the purpose of construction and maintaining levees, levee drainage and for all other purposes incidental thereto. The bonds were issued, prior to this amendment, for *83 that purpose and they show on their face that the full faith and credit of the Levee Board was pledged for their payment. And in addition it is stated on the bonds that they were issued in pursuance to Acts 28 of the 3rd Extra Session of 1934 and 29 of the 2nd Extra Session of 1935 (see LSA-R.S. 38:290) and "in conformity with all the provisions of the laws and Constitution of the State of Louisiana applicable thereto." It is declared in both of these acts that these bonds have the qualities of negotiable paper under the law merchant. Sections 7 and 6 respectively. In Act 28 of the 3rd Extra Session of 1934 Section 2, it is provided that the bonds are secured in the same manner that the existing bonds, etc., are secured and in addition thereto they are further secured by the levying and collecting of any tax that the "Board is now authorized by law to levy." The bonds issued under Act 29 of the 2nd Extra Session of 1935 are not only secured by the taxing power of the Board but it is provided in Section 4 therein that if this taxing power is not sufficient to pay them that it shall be the duty of the State Treasurer to provide sufficient funds of the State, not otherwise appropriated, and that it is the duty of the Legislature to provide sufficient funds for that purpose.
Under the provisions of Section 10 of Article 1 of the Federal Constitution, no state can pass any law impairing the obligation of contracts. Under the provisions of Section 15 of Article 4 of our Constitution, no law can be passed impairing the obligation of contracts. It is a fundamental principle that laws existing at the time a contract is entered into are incorporated into and form a part of the contract as though expressly written therein. It is also well established that the value of a contract cannot be diminished by subsequent legislation. The impairment is not one of degree but any encroachment in any respect upon the obligation cannot be permitted. The value of the contract cannot be diminished by curtailing the taxing power of the board as long as these bonds are outstanding and unpaid. We are supported in these views by the following cases: State ex rel. Moore v. City of New Orleans, 32 La.Ann. 726; State ex rel. De Leon v. City of New Orleans, 34 La.Ann. 477; State ex. rel. Carriere v. City of New Orleans, 36 La.Ann. 687; State ex rel. Marchand v. City of New Orleans, 37 La. Ann. 13; State ex rel. Thorn v. City of New Orleans, 37 La.Ann. 528; Von Hoffman v. City of Quincy, 4 Wall. 535, 18 L.Ed. 403; Wolff v. City of New Orleans, 103 U.S. 358, 26 L.Ed. 395; State of Louisiana ex rel. Southern Bank v. Pilsbury, 105 U.S. 278, 26 L.Ed. 1090; State of Louisiana ex rel. Nelson v. Police Jury of Parish of St. Martin, 111 U.S. 716, 720, 4 S.Ct. 648, 28 L.Ed. 574; State of Louisiana ex rel. Hubert v. Mayor and Council of City of New Orleans, 215 U.S. 170, 30 S.Ct. 40, 54 L.Ed. 144; Hicks v. City of Cleveland, 4 Cir., 106 F. 459; Rorick v. Board of Commissioners of Everglades Drainage District, D.C., 57 F.2d 1048; Bank of Minden v. Clement, 256 U.S. 126, 41 S.Ct. 408, 65 L.Ed. 857; Farrington v. Tennessee, 95 U.S. 679, 24 L.Ed. 558; Perry v. Town of Samson, D.C., 11 F.2d 655, affirmed, 5 Cir., 17 F.2d 1; City of Ft. Madison v. Ft. Madison Water Co., 8 Cir., 134 F. 214; Mobile v. Watson, 116 U.S. 289, 6 S.Ct. 398, 29 L.Ed. 620.
The constitutional amendment adopted pursuant to Act 756 of 1954, amending Section 2 of Article 16 of the Constitution of 1921 does not limit the taxing power of the Levee Board for all purposes to 3½ mills. The amendment from its clear and unambiguous language cannot be so construed. The amendment reads as follows:
"Section 2. For the purpose of constructing and maintaining levees, levee drainage, and for all other purposes incidental thereto, the governing authority of each district, with the exception of the Board of Levee Commissioners of the Orleans Levee District, may levy annually a tax not to exceed five (5) mills on the dollar on all taxable property situated within the alluvial portions of said district subject to overflow. The Board of Levee Commissioners of the Orleans Levee District, *84 or their successors in office, for the purpose of constructing and maintaining levees, levee drainage, and for all other purposes incidental thereto, may levy annually for the years 1955, 1956, 1957, 1958 and 1959 a tax not to exceed three and one-half (3½) mills, and annually thereafter a tax not to exceed two (2) mills, on the dollar on all taxable property situated within the alluvial portions of said district subject to overflow. Should the necessity arise in any levee district to raise additional funds for such purposes, the said tax may be increased when the rate of such increase and the necessity therefor shall have been submitted to and voted for at an election called for that purpose by a majority in number and value of the property taxpayers of said district qualified to vote and voting at such election. Provided that this amendment shall in no way affect or impair rights already acquired by holders of bonds or other obligations of the Orleans Levee District already issued or incurred."
Since there is no ambiguity in the language used in this amendment, we must abide by the intent and purposes expressed therein. The provision limiting the taxing power of the Levee Board "for the purpose of constructing and maintaining levees, levee drainage, and for all other purposes incidental thereto" merely limits the taxing power for that purpose and has no reference to outstanding obligations and bonds issued prior to the adoption of this amendment. This provision is prospective and relates to something to be done in the future. No reference is made therein to past obligations. The last provision in the amendment, viz.: "Provided that this amendment shall in no way affect or impair rights already acquired by holders of bonds or other obligations of the Orleans Levee District already issued or incurred" is retrospective and relates to obligations incurred prior to the adoption of the amendment. It protects the rights already acquired by the bondholders. In other words, if the Levee Board is remiss in making provisions for the payment of the interest on the bonds and the retirement of matured bonds, the bondholders could enforce the taxing power of 5 mills if necessary to meet these obligations. The amendment has a twofold purpose, the construction of levees, etc. and the payment of the Levee Board's outstanding obligations. It is the duty of the Levee Board to carry out these purposes. The interpretation we have placed on this amendment is consonant with the clear and unambiguous language used in the amendment and gives the amendment a constitutional effect rather than to annul it. It is well settled that a law should be construed so as to give it a constitutional effect if possible to do so.
It is suggested that the case of Board of Com'rs of Atchafalaya Basin Levee District v. C. Lagarde Co., 167 La. 612, 120 So. 25 and Board of Levee Commissioners of Orleans Levee District v. Whitney Trust & Savings Bank, 171 La. 28, 129 So. 658, are pertinent to a decision in this case. These cases are not applicable and involve entirely different factual situations. Moreover no bondholder was a party to the Atchafalaya suit and the question in the Whitney Trust & Savings Bank case was whether any specific portion of the 5-mill tax could be dedicated to the exclusion of other uses of the taxing power. Therefore any statements made in those cases could not be controlling.
The second question posed is whether or not the defendant Board abused its discretion in preparing its budget. The action of the Board is not subject to review unless there has been some palpable abuse. State ex rel. Moore v. City of New Orleans, 32 La.Ann. 726; Saloy v. City of New Orleans, 33 La.Ann. 79, 82; State ex rel. Marchand v. City of New Orleans, 37 La.Ann. 13, 18; State ex rel. Benedict v. City of New Orleans, 111 La. 374, 35 So. 605; State ex rel. Lorenz v. City Council of New Orleans, 116 La. 851, 41 So. 115; Gibson v. City of Baton Rouge, 161 La. 637, 109 So. 339, 47 A.L.R. 1151; Henderson v. City of Shreveport, 160 La. 360, 107 So. 139; Bullis v. Town of Jackson, La.App., 4 So.2d 550; J. H. Hines Co. v. *85 Guillot, 153 La. 319, 95 So. 794; Parker v. Mayor and City Council of Monroe, 128 La. 951, 55 So. 587 (and numerous authorities cited therein); Dickson v. Board of Commissioners of Caddo Levee District, 210 La. 121, 26 So.2d 474; Board of Commissioners of Tensas Basin Levee District v. Franklin, 219 La. 859, 54 So.2d 125.
The attack on the budget seems to be leveled principally at the work proposed by the board. We find no evidence in the record that would justify us in saying that the items listed in the budget are not correct or that the work proposed was not necessary. The chief engineer of the Levee Board testified that the work proposed in the budget is necessary and there was no evidence offered to contradict him in this respect. We cannot substitute our judgment as to the feasibility of the work. Dickson v. Board of Commissioners of Caddo Levee District, supra and Board of Commissioners of Tensas Basin Levee District, supra.
For the reasons assigned, the judgment of the lower court is reversed and set aside and the suit is hereby dismissed. Onehalf of the costs to be paid by the plaintiff Dantoni and the other half to be paid by the intervenors Edgar B. Stern, Sr., Robert E. Craig II, Charles Keller, Jr., Gervais Favrot and Leon Heymann.
McCALEB, Justice (dissenting).
The gist of the majority opinion, as I read it, is that Act 756 of 1954, amending Section 2 of Article 16 of the Constitution, does not impair the obligation of the contract between the Board of Commissioners of the Orleans Levee District and its bondholders only because the constitutional amendment has not decreased the taxing power of the Levee District from 5½ to 3½ mills.
It is my opinion that the construction thus given not only disregards the reason and spirit of the law and the cause of its adoption but leads to the unseemly consequence that the people, by the passage of the amendment, actually vouchsafed to the Levee District 3 mills for the future construction and maintenance of its levees during 1955 and 2½ mills to service and liquidate its antecedent outstanding bonds. That the Legislature and the people never intended anything of this sort is clearly shown by the fact that this constitutional amendment was indispensably related to and connected with Act 751 of 1954. which authorized the Orleans Parish School Board to levy an additional 1½-mill tax, provided Act 756 was approved by the electors, and also by Section 3 of Act 756, which sets forth the words to be printed on the official ballot to be used at the election thus:
"For the proposed amendment to Section 2 of Article XVI of the Constitution of 1921, decreasing the tax millage of the Board of Commissioners of the Orleans Levee District." (Emphasis mine.)
These words were followed by a similar provision for those persons who desired to vote against the decrease in millage.
Accordingly, it would seem plain that it was never the design of either the Legislature or the people that the Levee Board's taxing powers would be enhanced or even unaffected by the constitutional amendment. But the majority say that, since there is no ambiguity in the language employed in the amendment, there is therefore no room for interpretation and that the provision must be construed as written, that is, that it gives to the Levee Board power to levy taxes not to exceed 3½ mills for levee maintenance and construction during 1955 and also provides that the amendment shall not affect or impair the right of taxation to service and liquidate the antecedent bonds issued by the Board.
I cannot agree that the language used in the constitutional amendment supports this narrow interpretation. In the first place, in discerning what was intended by the provision that the annual tax levies of the Levee Districts throughout the State shall be for the purpose of constructing and maintaining levees "and for all other purposes incidental thereto," consideration *86 must be given to the fact that Section 2 of Article 16 of the Constitution provides the only general taxing power which Levee Boards are authorized to exercise. Bonds which were issued prior to the adoption of the 1921 Constitution were of necessity required to be liquidated out of the 5-mill levy applicable at that time to all Boards, as there was no other taxing source from which such funds could be obtained. Indeed, the language of the Constitution authorizing Levee Districts to assess a 5-mill tax is identical with that contained in the amendment reducing the tax millage of the Orleans Levee District to a maximum of 3½ mills. No one has heretofore contended that the language of the Constitution stating that the tax millage is to be used "for the purpose of constructing and maintaining levees, levee drainage, and for all other purposes incidental thereto" was so prospective in its purpose that the taxes collected from the levy were not attributable to the payment of the antecedent debts of the various Boards and particularly, in the case at bar, to the bonds issued in 1909, long prior to the adoption of Section 2 of Article 16 of the Constitution. It appears to me that payment of outstanding bonded indebtedness is a purpose incidental to the construction and maintenance of levees, as the very taxes which were funded into bonds (under authority of Section 3 of Article 16 of the Constitution) were dedicated for that purpose.
Nor can the proviso of the constitutional amendment be fairly construed as an absolute grant to the Orleans Levee District to levy additional taxes not to exceed 5½ mills. On the contrary, that proviso is simply a recognition by the people of the obligation of the antecedent contracts of the Board and assures the Board's creditors that, notwithstanding the reduction of the taxing power of the Orleans Levee District to 3½ mills, it would nevertheless be required to levy a tax not to exceed 5½ mills in the event the 3½-mill tax and other revenues at any time proved insufficient to service and liquidate its prior indebtedness. The evidence in this case, which the majority does not discuss, plainly exhibits, as found by the district judge, that the taxes which the Board will receive, based on 3½ mills for 1955, plus its other revenues, will not only be ample to pay all of the fixed charges and other outstanding contractual liability but will actually leave a balance of $2,676,463 on hand after such payment.
I am also of the opinion that the reduction in the power of taxation, which the people sought to effect by constitutional amendment, did not, in fact, impair the obligation of a contract as the President of the Levee Board, who intervened as a bondholder, contends. It is, of course, well recognized by the authorities cited in the majority opinion that the value of a contract cannot be diminished by subsequent legislation and that its impairment is not one of degree, but any encroachment upon the obligation must be avoided. However, the constitutional objections to legislation reducing the taxing power of a political subdivision obtain only in cases where the public body has been deprived of sufficient revenues or resources with which to pay its obligations according to their terms. For a comprehensive discussion of this matter see annotation 156 A.L.R. pages 1264-1280, also cases of State ex rel. Marchand v. City of New Orleans, 37 La.Ann. 13 and Board of Com'rs of Atchafalaya Basin Levee District v. C. Lagarde Co., 167 La. 612, 120 So. 25. The test, as stated by the Supreme Court of the United States in Mobile v. Watson, 116 U.S. 289, 6 S.Ct. 398, 29 L. Ed. 620, is whether there has been an impairment in fact of the obligation, that is, if the law which limits the taxing power leaves no adequate means for the payment of the bonds, it is then violative of the Federal Constitution. It is manifest that this is a salutary rule of reason for, otherwise, the taxing power pledged to the payment of the antecedent debt would be compelled to be exerted to the utmost at all times, irrespective of the amount of the revenue produced and the amount necessary to service or liquidate the obligation.
I respectfully dissent.
*87 HAWTHORNE, J., concurs in the dissent of McCALEB, J.

On Application for Rehearing
PER CURIAM.
In their application for rehearing the plaintiff and intervening taxpayers do not raise any questions but those fully considered and answered in the original opinion and in view of our conclusions and the correctness of our opinion we would ordinarily refuse the rehearing without a per curiam but in order to dispel the confusion that stems from the many erroneous statements that have been given widespread publicity we think a few factual observations are pertinent and necessary.
Counsel for the intervening taxpayers states in their brief: "The Court does not question the clear and abundantly supported finding of the lower court that a 3½ mill tax will not only be sufficient to discharge all antecedent bonds and other obligations of the Board maturing in 1955, but will afford a balance of over $2,600,000 for the Board's other operations." This statement is ridiculous because the facts as disclosed by the record show that the 3½ mills will produce only $2,403,792 whereas the outstanding obligations exceed this amount by $1,320,537. The interest on the bonds is $194,475; the principal of matured bonds is $924,000; the Dock Board contract calls for $925,000; and the obligations of the Board under other outstanding contracts now due and owing is $1,676,854. The foregoing outstanding obligations alone amount to $3,724,329 without including the operating expenses of the Board, the works necessary to maintain the levee system and the development of Lakeshore.
In the dissenting opinion, upon which much of the erroneous publicity given this case is based, and upon which counsel for appellees rely strongly, it is stated that the evidence plainly exhibits, as found by the district judge, that the taxes which the Board will receive from the 3½ mills plus its other income is not only sufficient to pay all of the fixed charges and other outstanding obligations but will actually leave a balance of $2,676,463. It is apt to observe that the dissenting opinion is based solely on the district judge's conclusions. A mere perusal of the record shows that our learned brother below left out all of the operating expenses,[1] and necessary construction work, in other words he deleted the fixed charges of operation amounting to $1,185,000 and $3,705,000 for the necessary construction proposed in the budget or a total of $4,890,500. The observation of the trial judge that the budget was "unrealistic" might be better applied to his conclusions rather than to the budget for nowhere in the record is found any basis or support for his conclusions which would not only leave the Board with an insufficient amount of money to pay its outstanding obligations but would leave it without funds to operate, maintain a levee system, and develop the Lakeshore area, from which most of its other revenue is derived, and would in effect abolish the Levee Board. It would leave the bondholders without the necessary machinery set up in the Constitution to collect and retire the bonds.
The proposed budget of the Levee Board shows that the 3½-mill tax together with all other revenue of the Board would leave a deficit of $537,183. At the time the budget was prepared $1,676,854 was due on other outstanding obligations which was inadvertently left out of the budget, when this amount is added to the deficit it would leave an actual deficit of $2,214,037. In fact the 5-mill tax with the other revenues of the Levee Board is not sufficient to cover the proposed expenditures and will leave a deficit of $1,173,432. These facts clearly show the fallacy of the erroneous statement that the 3½-mill tax with the other revenues of the Board would produce a surplus.
*88 The Levee Board produced competent testimony and various instruments to prove and establish the correctness of every item in the budget and the necessity of the work proposed therein. No evidence and not a single witness was produced to contradict the evidence and testimony presented by the Levee Board, consequently there is no room left for any speculation regarding this matter. Courts cannot substitute their personal opinion, not based on evidence and disregard the evidence contained in the record. As pointed out in our original opinion the action of the Board is not subject to review unless there has been some palpable abuse. In the absence of any evidence to this effect we are not warranted in disturbing the discretion placed in the Board by the Constitution and laws of this State.
Another of the many erroneous contentions receiving widespread publicity is expressed in the brief of counsel for the intervening taxpayers that the effect of our original opinion is the authorization of the Board to assess annually a total of 8½ mills. We merely held that the taxing power of the Levee Board was restricted insofar as levee work was concerned but the 5-mill taxing power was not curtailed insofar as the rights acquired by holders of bonds or other obligations may thereby be affected. The provision that the amendment shall not affect or impair the rights already acquired by holders of bonds or other obligations of the Board already issued or incurred, undoubtedly refers to the taxing power of the Board at the time the bonds were issued or the obligations incurred and is designed to protect those rights, in other words, the rights acquired under a 5-mill taxing power.
It is obvious to us that those who were responsible for drafting the constitutional amendment were fully aware of the Federal and State constitutional provisions forbidding the impairment of obligations and expected the result we have reached. The fact that the people may have been induced to vote for the amendment because of the wording of the proposal is a matter over which we have no control under our triumvirate system of government.
The applications for a rehearing are refused.
HAMITER, J., concurs.
HAWTHORNE, J., dissents.
McCALEB, Justice.
I dissent from the refusal of a rehearing in this case. Furthermore, I remain of the opinion that the trial judge has correctly appraised the facts with respect to the obligations of the Levee Board, its financial structure and condition. It appears to me that the attempt in the per curiam to justify the levy of a 5½-mill tax, notwithstanding the clear import of the constitutional amendment limiting the tax for the year 1955 to 3½ mills, evidences that the underlying premise of the Court's thinking is that, to deny to the Levee Board the prerogative of setting up a budget of expenditures exceeding the proceeds of a 3½-mill tax, will necessarily impair the obligation of its contract with the bondholders.
If, as the majority say in the original opinion and repeat in the per curiam, the constitutional amendment voted by the people did not reduce the Board's power of taxation to 3½ mills for 1955, then the matter of the Board's expenditures is of no moment at all. Therefore, since the majority see fit to enter into a discussion calculated to justify the expenditures of the Board for 1955, it would seem that their basic view turns more on a question of impairment of the obligation to the Board's bondholders, than on the Board's asserted unqualified right to levy an annual tax not to exceed 5½ mills.
NOTES
[1] Employees' Retirement Fund$40,000; Insurance (Fire, Compensation, Liability)$30,000; Airport Expenditures$90,000; New Equipment$50,000; Materials & Supplies$150,000; Payrolls $775,000; Miscellaneous$50,000.